For the reasons assigned the judgment appealed from is affirmed.

PONDER, J., absent.

McCALEB, J., recused.

76 So.2d 713

Eleanore M. FAZZIO, Wife of John J. Krieger,

v.

John J. KRIEGER.

No. 41328.

Nov. 8, 1954.

Dissenting Opinion Nov. 12, 1954.

Rehearing Denied Dec. 13, 1954.

Robert J. Lacey, Jr., New Orleans, for defendant-appellant.

James D. McGovern, Jr., New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

On October 25, 1949, a judgment of divorce was rendered in favor of Mrs. El-eanore M. Fazzio and against her husband John J. Krieger on the ground that he had been condemned to an infamous punishment. This judgment awarded the wife the permanent care and custody of their three minor children, Eleanore, Elizabeth, and Mary J. Krieger, aged respectively eleven, six, and five. In a judgment rendered on April 10, 1953, the district court increased the amount awarded to the wife for the care and support of these minor children from $50 a month, which the husband had been paying under a previous order of court, to $75 a month. From this judgment the husband has appealed.

At the time the district court increased the alimony in this case to $75 a month it was disclosed that the wife's entire income was her salary of approximately $240 a month, and that the three minor children were attending a boarding school at a cost of $180 a month. The husband was not employed, but there is some evidence in the record that he had attempted to secure employment. However, it was shown that defendant had remarried, and that his second wife, with whom he was living, was earning $280 a month as a stenographer. In increasing the alimony to $75 a month the trial judge took into consideration the earnings of the second wife.

The defendant in the instant case does not deny that he has a duty or obligation under the law to support his children, and the only question presented by this case is whether the trial judge was correct in tak-

ing into consideration the earnings of the second wife in computing the amount of alimony awarded for the support of the children.

· ∎ In this state it is too well settled to need comment that the salary of a wife who is living with her husband is community property. Articles 2402, 2334, Civil Code; Houghton v. Hall, 177 La. 237, 148 So. 37; Succession of Howell, 177 La. 276, 148 So. 48; De Maupassant v. Clayton, 214 La. 812, 38 So.2d 791.

The real problem presented by the instant case is whether the provisions of Article 2403 of the Louisiana Civil Code prevent the payment of alimony for the support of the children of a former marriage from the community funds of a second marriage. Article 2403 provides:

"* * * the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst *the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.*" (All italics ours.)

If the obligation or duty to support children of a former marriage is to be considered a debt contracted by the husband prior to his second marriage, it would appear that the community is not responsible for this obligation under the provisions of Article 2403. The issue then presented is whether the obligation or duty to pay ali-

mony for the support of children of a former marriage can be considered a debt within the meaning of Article 2403.

∎ In determining this basic issue the origin of Article 2403 of the Louisiana Civil Code is helpful. Article 2403 of the present Code is substantially the same as its predecessors, Article 2372 of the Code of 1825 and Article 65 of the Code of 1808. Formerly it was believed that Pothier's Treatise on the Community, which appeared in 1769, was the principal source of Louisiana community property law. See Dart, The Louisiana Judicial System, 1 La.Dig. 13 (1917). However, it is obvious that Article 2403 is based neither on Pothier's treatise nor on the corresponding article of the Code Napoleon, Article 1409. This is so because both Pothier and Article 1409 of the Code Napoleon provide that the community is liable among other things for all the personal debts of the spouses which are owed on the date of marriage. See 6 Oeuvres de Pothier (1835), Traité de la communauté, p. 165, n° 233; Art. 1409, Code Napoleon. Contrary to the earlier belief expressed by Dart, above, it is now generally thought that Louisiana community property law is both French and Spanish in origin. See Oppenheim, Marital Community, 19 Tul.L.Rev. 200, 205 (1944), and authorities cited therein. Research into the Spanish law of community property reveals that since the year 1255 A.D. the Spanish law has contained the provision that an antenuptial debt of one spouse is the liabili-

ty of his separate property alone. See 1 de Funiak, Principles of Community Property 435–437, sec. 156 (1943). The well-known Spanish commentator Gutierrez summed up the Spanish view on this subject in Quaestio CXXIX, No. 1, to Nov. Rec.Law 9, as follows:

" * * * only those debts contracted during marriage were common and therefore payable from goods multiplied and acquired during the same marriage, which concern the actual marriage of man and wife and their partnership, and which accrue and were contracted on its account by both or one of them." See 2 de Funiak, op. cit. supra 458.

▆ It is thus obvious that Article 2403 of the Louisiana Civil Code is Spanish in origin. In this connection it is significant to note that, although under Spanish law the community was not responsible for the separate debts of the spouses, or debts contracted prior to marriage, one spouse's share in such community was responsible for an obligation imposed on him, or her, by law, such as the obligation imposed on a parent to provide maintenance and support for his or her children by a former marriage. See 1 de Funiak, op. cit. supra 467–469, sec. 165. The views of the Spanish jurisconsults Matienzo and Gutierrez concerning the liability of the community for an obligation imposed on one of the spouses by law are discussed by de Funiak in these words:

"It will be seen, then, that when the law itself imposed an obligation on a spouse, as for support of a parent, or for taxes, or for a penal sum upon sentence for a criminal delict, or the like, the spouse's half share of the community property might be reached, *unlike the case of the ordinary separate creditor of the spouse*. In the case of the ordinary separate creditor, his rights to reach his debtor's properties were subordinated to the well-being and interests of the family which required that the community property be kept intact for its benefit during the marriage. *But obligations imposed by the state itself took priority over everything else.*" 1 de Funiak, op. cit. supra 468–469, sec. 165.

In view of the fact that Article 2403 of the Louisiana Civil Code is obviously Spanish in origin, the opinions of the Spanish commentators as discussed above are authority for the proposition that the payment of alimony for the support of children of a former marriage not only does not fall within the prohibition of Article 2403, but is clearly a valid liability of the second community.

▆ Moreover, in Louisiana law, as in Spanish law, the duty of a parent to support his children is an obligation imposed by law. Civil Code, Articles 227, 229; Black v. Black, 205 La. 861, 862, 18 So.2d 321; State v. Seghers, 124 La. 115, 49 So. 998. It is therefore apparent that alimony for the support of children of a former marriage is not a *debt* as that word is used in Article 2403 of our Civil Code. This view finds strong support in decisions of the Supreme

Court of the United States, of other courts of this country, and of our own court. In Audubon v. Shufeldt, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009, the Supreme Court of the United States in discussing the nature of the obligation to pay alimony said:

"Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. Generally speaking, alimony may be altered by that court at any time, as the circumstances of the parties may require. The decree of a court of one state, indeed, for the present payment of a definite sum of money as alimony, is a record which is entitled to full faith and credit in another state, and may therefore be there enforced by suit. * * * But its obligation in that respect does not affect its nature. In other respects, alimony cannot ordinarily be enforced by action at law, but only by application to the court which granted it, and subject to the discretion of that court. Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings * * *."

In Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390, the Supreme Court of the United States held that the duty of the husband to support his wife and children was an obligation imposed by law, and that alimony in arrears awarded to a wife against her husband for the support of herself and their minor children is not a provable debt barred by a discharge in bankruptcy.

These two Supreme Court cases were cited and relied on in Godchaux v. United States, 102 F.Supp. 266. In that case the United States District Court for the Eastern District of Louisiana concluded in a well-written and clearly reasoned opinion that alimony was not a debt but a duty or obligation imposed by law, and that consequently Article 2403 of the Louisiana Civil Code requiring antenuptial debts of the husband to be acquitted out of his own property had no application to the payment of alimony. We think this conclusion is correct.

This court long ago in State ex rel. Huber v. King, 49 La.Ann. 1503, 22 So. 887, 889, reached the same view in regard to the nature of alimony. In that case the husband had been adjudged in contempt of court for failure to pay alimony to his wife and committed to prison. He contended among other things that such imprisonment constituted imprisonment for debt. This court cited Articles 119 and 120 of the Civil Code which provide that the husband and wife owe to each other mutual fidelity, support, and assistance, and that the husband is obliged to furnish the wife with whatever is required for the convenience of life in pro-

portion to his means and condition. The court went on to say:

"The obligations thus declared by the lawmaker are, in no sense of the word, 'debts' due by the spouses; they are simply recognized legal duties, which it is of paramount importance to the welfare of society should be not only recognized, but enforced, by the courts. An order for alimony in a divorce suit is nothing more than the judicial sanction and enforcement, under abnormal conditions, through the judiciary, of the duty by the husband to support the wife. A right to receive or demand support (or money in order to afford support) is something other and different than a right to receive and be paid a technical legal debt. * * *"

This court in the Huber case cited and quoted from text writers and the opinions of other courts of this country:

"Bishop on Marriage and Divorce, paragraph 428, page 370, Sixth Edition, referring to this matter, says: 'Though the husband's liability to pay money is distinctly recognized in the law, and is enforceable against him and his property, it is not a "debt."' * * * In Daniels v. Lindly [Lindley], 44 Iowa, [567] 569, the court said: 'The claim of the wife for alimony is not in the nature of a debt. She is not the creditor of the husband. It is an equitable allowance, made to her out of her husband's estate.' "

See also Wright v. Wright, 189 La. 539, 179 So. 866; Cotton v. Wright, 193 La. 520, 190 So. 665; Festervand v. Laster, 15 La.App. 159, 130 So. 634.

After a consideration of the authorities cited and quoted hereinabove, we are of the opinion that the obligation of the defendant in the instant case is an obligation imposed by law and is clearly not a debt within the meaning of Article 2403 of the Civil Code, and that therefore the trial judge was correct in considering the husband's half of the income of the second community in fixing the amount awarded for the maintenance and support of his children by a former marriage.

We rest our opinion on the authorities hereinabove cited and relied on. If it is argued, however, that the obligation to pay alimony for the support of children of a former marriage is a debt contracted prior to the second marriage within the meaning of Article 2403, there is authority in the jurisprudence of this state to the effect that the property of the community is liable to seizure for the debts of the husband contracted before the marriage, notwithstanding the provisions of Article 2403. This is because Article 2403 must be read in connection with Article 2404 which empowers the husband to administer the effects of the community, dispose of the revenues which they produce, and alienate them by an encumbered title. These cases are Guice v. Lawrence, 2 La.Ann. 226; Glenn v. Elam, 3 La.Ann. 611;

Davis v. Compton, 13 La.Ann. 396; Hill v. Abell, 5 La.App. 497; Stafford v. Sumrall, La.App., 21 So.2d 83, 85.

In Stafford v. Sumrall, supra, the Court of Appeal for the First Circuit in discussing Article 2403 of our Civil Code said:

"* * * However, in construing this provision [Article 2403], the Supreme Court, in the case of Davis v. Compton, 13 La.Ann. 396, stated that this article of the Code (2403) 'must be interpreted in connection with Article (2404) of the same Code, which pronounces the husband to be the head and master of the partnership or community of gains, and permits him to administer its effects, dispose of the revenues which they produce, and alienate them by an encumbered title, without the consent and permission of his wife. * * * As the husband has the right to alienate the effects of the community without the consent of his wife, creditors of the husband before marriage ought also to have the right to seize the effects of the community to satisfy their claims.' * * *"

Some of these cases were founded on the theory, first announced in Guice v. Lawrence, supra, that the wife's interest in the community property was only an expectancy or residuary interest that did not come into existence until the community was dissolved and liquidated. We are aware that this theory was repudiated by this court in Phillips v. Phillips, 160 La. 813, 107 So. 584, which holds that the wife has the absolute ownership of half of the community property during the existence of the community, subject to the husband's power of administration. These cases, however, would still be authority for the proposition that the husband's half interest in the community is liable for his debts contracted before marriage, subject, of course, to the community debts. Thus it would appear under the above cited cases that, if the obligation of a parent to support his children of a former marriage could be considered a *debt* contracted before his second marriage within the meaning of Article 2403, that obligation is nonetheless enforcible from the husband's share of the community. Under this theory also the judge of the lower court was correct in considering the salary of the second wife in computing and ordering the husband to pay alimony in the instant case.

We rest our decision in this case, however, on the principle of law that the obligation of the father to support his children by a former marriage is not a debt but an obligation or duty imposed by law for which his undivided interest in the second community is responsible.

For the reasons assigned the judgment appealed from is affirmed, appellant to pay all costs.

FOURNET, C. J., and HAMITER, J., concur in the decree.

MOISE, J., dissents with written reasons.

MOISE, Justice (dissenting).

My expressions here are in the nature of a dissent and not a concurring opinion, for this is the first occasion that this Court has had to pass on the application of Article 2403 of the LSA–Civil Code under the facts herein stated.

The plaintiff, John J. Krieger, contracted a marriage; it had an unhappy ending; three children were born of the marriage; the wife obtained a divorce on the grounds of his having been convicted of an infamous offense, and she also obtained the custody of the children with a money judgment awarded for their support in the amount of $50 per month. This judgment is executory, and on its rendition it became the property of the person in whose favor it was rendered. Therefore, the obligation of this judgment, and particularly after the dissolution of the marriage, was a personal debt of the husband.

Thereafter, the husband contracted a second marriage. Krieger does not work, and his wife earns $280 a month as a governmental employee. The first wife filed a rule for additional alimony and he is condemned to pay additional alimony, in the sum of $25 per month, because the court took into consideration the salary of the second wife, and it declared that $25 per month was a fair assessment to be deducted out of his half of the wife's salary.

The judgment of this court is unenforceable, because it does not take into consideration the conditions precedent for the necessity before making an award—such as the necessities of life, the payment of charges and debts, the consideration of the personal obligations of the husband and the wife before this marriage—and after all of these things are figured and accounted for, then and then only, conceding the judgment to be correct, could an assessment be made. So, therefore, we take that to enforce this judgment, the suit must be remanded to the court of original jurisdiction.

But, the majority opinion of this Court rests its contention that Article 2403 of the LSA–Civil Code, and all of its provisions, is not applicable because the payment of alimony is not a debt but a duty. The super-technical construction as to the meaning of words becomes a distinction without a difference, which I will proceed to demonstrate.

Article 2403 of the LSA–Civil Code reads:

"In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, *whilst the debts of both hus-*

*band and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."* (Italics ours.)

Under this article, the plain intendment of the law, and we may say "the letter killeth but the spirit maketh alive", is that personal debts or obligations or duties incurred during the first community must be acquitted out of the funds of the personal property of the spouses in the second community. To bring about a logical result, numerous decisions have been quoted, giving the definition of "alimony" by the court when they were not considering cases of the same facts as in this suit.

What road, therefore, are we going to take? The Court's definition of words not involving the same question of law, or Mr. Webster's definition of the two terms?

On "duty" Mr. Webster states:

"Duty—That which one is bound to render or pay; a material due of any sort; a charge or payment due."

On "debt" he states:

"Debt—That which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to obligation or liability."

The terms are, therefore, almost synonymous. Whether it is a duty or whether it is an obligation or whether it is a debt, it has to be paid in currency—it has to be acquitted out of funds—and it is certainly not the debt of the wife, nor the debt of the second community. And so, therefore, to arrive at the conclusion reached by the majority opinion, Article 2403 of the LSA–Civil Code had to be amended by this Court by writing in an exception not provided for in the Code.

We must remember that what is sought here is to bind the second community to pay the obligation or debt of the husband out of the community funds, and that the article of the code prohibits such.

Article 160 of the LSA–Civil Code relates to the payment of alimony to the wife by the husband.

Article 120 of the LSA–Civil Code relates to the fact that the husband must receive the wife and provide her with the necessities of life.

We do not find in either of these articles any mention that the wife's salary, forming a part of the second community, could be used for the payment of this debt which has been reduced to a judgment. Evidently the Legislature recognized that there was no provision of the Code relating to the financial support that the wife must give to her husband, because they have provided in Act 617 of 1954, which has reciprocal provisions both as to the husband and wife, that this support is due if in destitute or necessitous circumstances, and it is provided that such

support is a ground for separation of bed and board.

I rest this decision *on the fundamental principle of law that all cases must be governed by their own facts; that when the Court submits to the infallibility of words used by judges in past decisions, it is only establishing the mental slavery of the members.*

I again call attention to the fact that "debt" and "duty" are synonymous terms; that when the Court seeks to perpetuate what is decided in cases not relating to the particular article of the code, it only arguments that it is a successful organization, that it is well devised, but it destroys mental independence, for no one must pretend that the mind of man is perfect; it is affected by desires, colored by hopes and weakened by fears, and all of this adds to the incorrectness of judgment.

The cited cases in the majority opinion were cases in which the court had under consideration the enforcement of the payment of past due alimony by the process of contempt, and it made the ingenuous distinction that alimony is a duty not a debt, and, therefore, the charge of imprisonment for debt had no application. We have no such condition in this case.

I respectfully dissent.

Rehearing denied.

MOISE, J., dissents.