316 So.2d 421 (1975)
Michael Lee CONNELL, Plaintiff-Appellant,
v.
Vergie Dell CONNELL, Defendant-Appellee.
No. 4937.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Rehearing Denied August 28, 1975.
*423 Joseph Greenwald, Asst. Dist. Atty., Lake Charles, and Philip R. Riegel, Jr., New Orleans, for plaintiff-appellant.
William L. McLeod, Jr., Lake Charles, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Dr. Michael Lee Connell seeks a judgment ordering a partition of the community which formerly existed between him and the defendant, Mrs. Vergie Dell Connell. The defendant answered and filed a reconventional demand in which she prayed for substantially the same relief as that sought by plaintiff. After trial, judgment was rendered by the trial court condemning plaintiff, Dr. Connell, to pay to defendant, Mrs. Connell, the sum of $21,798.16. Plaintiff appealed, and defendant answered the appeal praying that the amount of the award be increased.
A number of issues were presented in the district court and are presented here. The trial judge ruled on each such issue, and the judgment which he rendered obviously was intended to effect a partition of the community which formerly existed between the parties.
No inventory and appraisal of the assets of the community has ever been made, however, and no Detailed Descriptive List of the property which belonged to the community has ever been filed. Neither party makes an issue of that circumstance, and ordinarily we would be inclined to overlook it. The evidence, however, fails to establish some facts which we feel are essential to warrant a judgment finally partitioning the community property between the parties. For that reason we have decided that the judgment appealed from must be reversed and the case remanded for additional evidence and for a partition of the community property in accordance with what we consider to be the applicable law. Despite the fact that the judgment of the district court ultimately must be reversed and the case remanded, we nevertheless will determine all of the issues presented which we feel can be disposed of in this proceeding.
Dr. and Mrs. Connell were married in Orleans Parish on June 20, 1970. It was the second marriage for each of them.
*424 About 19 months later, on January 24, 1972, Mrs. Connell instituted a separation suit against her husband in Calcasieu Parish, and judgment was rendered in that suit on April 7, 1972, decreeing a separation from bed and board between the parties. That judgment had the effect of dissolving the community of acquets and gains which formerly existed between the parties on January 24, 1972, that being the date on which the separation suit was instituted.
Dr. Connell's first marriage was terminated by a judgment rendered on May 5, 1970, decreeing a final divorce between him and his first wife. In that judgment Dr. Connell was ordered to pay his first wife "$1200.00 per month alimony, for the support of his wife and minor children, beginning on the first day of May, 1970 and every month thereafter, until terminated or modified by further orders of Court." He later filed a rule to have thatalimony reduced, and in response thereto judgment was rendered on January 22, 1971, reducing the alimony "for the support of his wife and minor children" to $1,000.00 per month, effective February 1, 1971. Dr. Connell made substantial payments to his first wife pursuant to the above decrees while he was married to the defendant in this suit.
Dr. Connell also made other payments from funds belonging to the second community, including payments to a partnership in which he had an interest prior to his second marriage, investments in a Keough Trust Fund and in mutual stock funds, payments in settlement of the community claims of his first wife and premiums on life insurance policies taken out before his second marriage. Mrs. Connell contends, and the trial judge found, that the doctor was obliged to reimburse the community or Mrs. Connell for some of those expenditures.
As already noted, the trial judge ultimately concluded that Dr. Connell must pay Mrs. Connell $21,798.16 in order to effect a partition of the community. He arrived at that figure by determining that Dr. Connell was indebted to the community for funds spent for his separate estate in the amount of $57,990.46, but that the community was indebted to him for $12,733.99. He found that Mrs. Connell was indebted to the community for $6,097.00, but that the community owed her $4,186.00. He computed that Dr. Connell thus owes defendant $21,798.16.
We have concluded that the trial judge erred in some of the conclusions which he reached.

1.
One issue presented is whether Dr. Connell is obligated to reimburse the community the amounts which he paid to his first wife as alimony, and for the support of his children who were born of his first marriage, from funds which belonged to the second community.
The trial court found that Dr. Connell paid to his first wife for these purposes the aggregate sum of $27,946.45 from funds belonging to the second community. He concluded that plaintiff's obligation to pay all of those amounts were separate debts, owed by plaintiff's separate estate, and that his separate estate is bound to reimburse the community for all of said payments. We disagree.
Articles 2403 and 2408 of the Louisiana Civil Code provide:
"Art. 2403. In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."
"Art. 2408. When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or *425 her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
The payments of alimony and child support made by Dr. Connell did not enhance the value of his separate estate, so LSA-C.C. art. 2408 clearly is not applicable. The issue presented is whether the alimony and support payments that accrued and became due and payable to his first wife during the existence of the second community, were "debts" of the husband "anterior to the marriage," which must be acquitted out of his separate estate under the provisions of LSA-C.C. art. 2403.
Defendant, in arguing the correctness of the trial court's holding that the alimony and support payments which became due during the second community were his separate debts, relies on the cases of Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954); White v. Klein, 263 So.2d 496 (La.App. 1 Cir. 1972); Morace v. Morace, 220 So.2d 775 (La.App. 1 Cir. 1969); Lytell v. Lytell, 144 So.2d 925 (La.App. 4 Cir. 1962), and Creech v. Capitol Mack, Inc., La., 287 So.2d 497 (1974).
Plaintiff contends that the obligations imposed on him to pay alimony and child support were not "debts" within the intendment of LSA-C.C. art. 2403, but that they were obligations imposed by law during the second marriage which may be paid with funds belonging to the second community. Alternatively, he argues that if these alimentary obligations constituted "2403 debts," they arose only as each payment became due during the existence of the second community, and that they thus were community debts under the terms of article 2403.
We think the alimony and support payments which Dr. Connell was required to make during his second marriage were not debts which were "contracted" either during or before his last marriage, but instead they were obligations imposed by law which came into existence because of the circumstances which existed at the time each such payment became due.
In Fazzio v. Krieger, supra, our Supreme Court held that the earnings of the defendant's second wife, which admittedly belonged to the second community, should be considered in determining the amount which the defendant husband should be required to pay to his first wife as support for the children of the first marriage, and that payments of alimony for the support of those children is a valid obligation of the second community. The court said:
"In view of the fact that Article 2403 of the Louisiana Civil Code is obviously Spanish in origin, the opinions of the Spanish commentators as discussed above are authority for the proposition that the payment of alimony for the support of children of a former marriage not only does not fall within the prohibition of Article 2403, but is clearly a valid liability of the second community." (Emphasis added).
Defendant points out that the court stated in Fazzio that "the trial judge was correct in considering the husband's half of the income of the second community in fixing the amount awarded for the maintenance and support of his children by a former marriage," and that it also stated that "the obligation of the father to support his children by a former marriage is not a debt but an obligation or duty imposed by law for which his individual interest in the second community is responsible." Defendant interprets that language as meaning that only the one-half interest of the husband in the second community is liable for the payment of alimony and child support to his first wife, and that the obligation of the husband to make such alimony *426 and support payments were debts "anterior to the marriage," and thus they were his separate debts. Mrs. Connell contends that the second community is entitled to be reimbursed from Dr. Connell's separate estate the amounts which were paid from community funds for those purposes.
We place a different interpretation on the language used in Fazzio. Considering the above quoted statements in their proper context, we think the court meant that since the earnings of the husband's second wife belonged to the second community, the husband's one-half interest in those earnings was liable for the payment of alimony of his children by the prior marriage. The ruling of the court thus is that the obligation of the husband to make current payments of alimony and child support to his first wife are debts of the second community, and that they are not separate debts of the husband.
In Morace and Lytell, supra, the courts held, consistent with Fazzio, that the income of the husband's second wife should be considered in determining the husband's ability to pay support for the children of a prior marriage. This implies that the obligation of the husband to support his children by a former marriage while the second community is in existence is an obligation of the second community. We concede that there is no specific holding to that effect in either of the cited cases, but the cases at least tend to oppose, rather than support, the position taken by defendant in the instant suit.
In White v. Klein, supra, the first wife of the defendant husband obtained a judgment for child support arrearages before the husband entered into a second marriage. The question presented was whether the assets of the second community could be seized and sold to pay that judgment. Our brothers of the First Circuit Court of Appeal held that the amount due under that judgment "may be discharged out of the property of a subsequent community of the responsible party." We do not interpret that case as holding that the child support payments which became due before the second marriage were obligations of the second community, because no issue was presented as to whether the second community should be reimbursed the amount of community funds which were expended for those purposes. In that case, however, the parties agreed that the second community was liable for "current child support payments due to the husband's children by a former marriage," and the husband's sole contention was that assets of the second community could not be seized and sold to satisfy "past due payments which accrued prior to the establishment of the community." This case supports the position taken by plaintiff rather than that taken by defendant in the instant suit.
In Creech v. Capitol Mack, Inc., supra, the Supreme Court clarified the uncertainty which existed at that time relating to the rights of antenuptial creditors of the husband against the assets of the community, and it recognized the obligation of the husband to account for the enrichment of his separate estate by the discharge of antenuptial debts from community funds. The Creech case, however, did not involve the payment of alimony and child support to the husband's former wife, so it is not applicable to the issues being considered here.
Most of the cases cited relate to the support which is owed by the husband to his children by a prior marriage. We see no difference in principle, however, between the husband's duty to support his children and the obligation which the law imposes on him to pay alimony to his former wife. In both instances the obligation is one imposed by law, and it arises or comes into existence from day to day because of the current needs of the parties who are entitled to that support.
After considering all of the authorities cited, we conclude that the alimony *427 and child support payments owed by Dr. Connell which accrued or became due during the existence of the second community, that is, between June 20, 1970, and January 24, 1974, were obligations of that community and were properly payable from funds belonging to the second community. They were not separate debts of the husband. The trial judge thus erred in holding that the second community is entitled to be reimbursed the sum of $27,946.45 from Dr. Connell's separate estate because of payments made from community funds to his former wife for alimony and child support.

2.
On May 14, 1970, shortly before plaintiff's marriage to defendant, Dr. Connell and his mother formed a partnership for the purpose of acquiring and renting apartments. On the day that partnership was formed, it purchased property known as the Dellicon Apartments for $115,000.00, of which amount $25,000.00 was paid in cash and the balance of $90,000.00 was evidenced by promissory notes secured by three mortgages. From the date of the purchase until August, 1971, plaintiff made payments of principal and interest on these mortgage notes, but the record does not show how much was paid by him and how much was paid by his mother. On August 13, 1971, while the parties to this suit were married, the indebtedness was consolidated into one new note for $88,000.00, secured by one mortgage. Thereafter, Dr. Connell made payments of $748.00 per month to apply on the principal and interest due on the new mortgage note.
On September 29, 1972, about eight months after the second community was dissolved, the Dellicon Apartments were sold for $130,000.00. The balance due on the consolidated mortgage note at that time was $86,318.26. Dr. Connell testified that he received only $4,000.00 or $5,000.00 from the sale price, all of which was used to pay debts of the partnership. He also stated that the partnership suffered losses which averaged about $1,538.00 per month while it existed. Mrs. Connell admitted that she probably claimed one-half of the loss of the Dellicon Apartments on her 1970 income tax return filed separately from her husband's return.
A certified public accountant engaged by Mrs. Connell found that the apartments were operated at a substantial loss while they were owned and operated by the above partnership. During the calendar year 1971 the expenses of operating the apartments exceeded the revenues by $15,615.00. The above accountant also determined from an examination of plaintiff's records that during the existence of the second community Dr. Connell paid the aggregate sum of $12,714.34 from community funds into the Dellicon Apartments account.
The trial judge accepted the accountant's figures and concluded that $12,714.34 of the community funds were spent on the Dellicon partnership. He decreed that "the community is entitled to recover this sum." We think the trial court erred in reaching that conclusion.
If payments were made to the partnership account from community funds, Mrs. Connell is entitled to recover "one-half of the value of the increase or ameliorations" in Dr. Connell's interest in the partnership which resulted from the payment of these community funds, as provided in LSA-C.C. art. 2408. The community funds were not used in this instance to pay debts of the husband anterior to the marriage, and thus LSA-C.C. art. 2403 is not applicable.
In Dubuisson v. Moseley, 232 So.2d 870 (La.App. 3 Cir. 1970), where a similar issue was presented, we said:
"By virtue of the above article (2408), the community of acquets and gains is only entitled to the enhanced value of *428 the partnership during the existence of the community ..."
* * * * * *
"The wife's community interest was correctly valued as the net enhancement of the husband's interest in the partnership account during the marriage."
The evidence in the instant suit fails to show that there was an increase in the value of Dr. Connell's one-half interest in the partnership resulting from these expenditures, and the evidence thus does not support defendant's claim for reimbursement under Article 2408.
Defendant points out, however, that the apartment complex was bought for $115,000.00 shortly before the marriage and it was sold for $130,000.00 after the dissolution of the second community. She argues that the property thus increased in value to the extent of $15,000.00 during the second marriage. She contends that Dr. Connell's one-half interest in the complex was enhanced in value by $7,500.00, and that under LSA-C.C. art. 2408 she is entitled to recover $3,750.00 from his separate estate. She takes the position that the burden of proof rests on Dr. Connell to show that the increase in value was due to other causes, and that since he has failed to meet that burden, the court must conclude that the increase resulted from the contribution of community funds. We cannot agree with that argument.
The First Circuit Court of Appeal held in In re Succession of Rusciana, 136 So.2d 509 (La.App. 1 Cir. 1961), that:
"A husband or wife claiming entitlement to one-half of the enhanced value of the other's separate estate because of alleged increased value thereof resulting from their joint effort and industry during the marriage bears the burden of proving: (1) the improvements so made did in fact enhance the value of the separate property of the other; (2) such improvements were made with community funds or resulted from their joint industry, expense or labor; (3) the value of the separate property of the other spouse at the commencement and dissolution of the community (so that the enhanced value may be determined); and (4) that the enhancement did not result in the ordinary course of events or due to the property's normal rise in value or the chance of trade. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502, and cases cited therein."
The apartment complex was sold about nine months after the community was dissolved, and there is no evidence tending to show the value of that property at the time of the dissolution of the community. Dr. Connell testified that during that nine month period he made several improvements on the apartments, including repairs and painting, the completion of installation of a burglar alarm system and an intercom. His testimony to that effect was contradicted, but the evidence nevertheless is such that we cannot determine from it when these repairs were made, how much was spent for them and whether those expenditures had any effect on the ultimate selling price of the property.
The trial judge held, and we agree, that "there is no proof that the increase in value of the Dellicon Apartments was the result of the common labor, expense or industry of the community, but, rather, it appears to this court to have been the result of an ordinary rise in property values."
We conclude that the trial judge erred in ordering plaintiff to reimburse the second community the sum of $12,714.34, that being the amount which the court found to have been paid to Dellicon Apartments from community funds.

3.
Prior to defendant's second marriage he took out four life insurance policies insuring his life, naming his first wife or his children as beneficiaries in all of them.
*429 After his second marriage, he made defendant the beneficiary in some of those policies. Following the dissolution of his second marriage, Dr. Connell again changed the beneficiaries, and eliminated defendant as a beneficiary under any of those policies. Under the terms of each policy, the insured retains the right to name and to change the beneficiaries.
During the existence of the second community defendant continued to pay premiums on the above policies, using community funds to make those payments. The record does not show clearly the amount of the premiums which were paid during the second marriage. The trial judge found, however, that a total of $4,330.55 was paid out of funds belonging to the second community as premiums, and he decreed that Dr. Connell must reimburse the community the full amount of those payments. Plaintiff contends that he should not be required to reimburse the community any amount at all, since there was no showing that the payments made with community funds enhanced the value of the policies.
The law is settled that life insurance policies acquired before marriage constitute a part of the separate estate of the acquiring spouse, if he retains control of the beneficiaries. See LSA-C.C. art. 2334. See also Succession of Verneuille, 120 La. 605, 45 So. 520 (1908); In re Moseman, 38 La.Ann. 219 (1886); Succession of Lewis, 192 La. 734, 189 So. 118 (1939); Butler v. Butler, 228 So.2d 339 (La.App. 1 Cir. 1969); Succession of McLellan, 144 So.2d 291 (La.App. 4 Cir. 1962). The policies involved in the instant suit thus belonged to the separate estate of plaintiff.
The amount which the separate estate of the plaintiff must reimburse the community, however, is not the amount which was paid as premiums on the policies, but instead it is the increase in the cash surrender value of the policies resulting from the payments made with community funds. Butler v. Butler, supra; Broyles v. Broyles, 215 So.2d 526 (La.App. 1 Cir. 1968).
Three of the policies in the instant suit appear to have had cash surrender values at the time of the dissolution of the community. The cash surrender values are shown as of the various anniversaries of the policies, but the record does not show how much the value of each policy increased during the existence of the second community as the result of payments made with community funds. We agree that the community is entitled to be reimbursed the enhanced value of the policies resulting from the payments made with community funds, but the evidence does not show the amounts which should be reimbursed.
The case will be remanded, therefore, for additional evidence as to the amount by which the cash surrender values of the policies increased as a result of payments made from community funds, and for a determination as to the amount which Dr. Connell's separate estate should reimburse the community.

4.
In 1968, Dr. Connell set up a retirement trust fund under the "Keough Plan." He began contributing funds to that trust immediately, and during the existence of the second community he contributed $2,500.00 to it. Of that amount, $900.00 was paid with community funds, and the remaining $1,600.00 was paid with funds which plaintiff received from the sale of shares of stock which belonged to his separate estate.
Under the Keough Plan, Dr. Connell could not obtain the trust funds without incurring a tax penalty. The fund was established to guarantee him income at retirement, and to avoid or to defer taxation of the funds put into the trust.
Dr. Connell contends that the value of the trust fund was not enhanced during the existence of the community, and that his *430 separate estate thus is not indebted to the community. He takes the position that the requirements of LSA-C.C. art. 2408 have not been met.
The cases of Blalock v. Blalock, 259 So.2d 367 (La.App. 2 Cir. 1972); Moore v. Moore, 187 So.2d 145 (La.App. 2 Cir. 1966), and Broyles v. Broyles, supra, relate to teachers retirement funds set up in favor of one spouse and funded by the community. The court held in each of those cases that the amount on deposit in the retirement fund was the separate property of the teacher-spouse for whom the fund was created, but that the latter had to reimburse the community the amounts which it contributed to the retirement plan. We think those cases are applicable here.
In the instant suit the trial judge held that "only $900.00 of community funds were used to buy this trust," and he ordered plaintiff to reimburse that amount to the second community. We agree with that part of the judgment rendered by the trial court.
We find no merit to defendant's claim that plaintiff should also be compelled to account to the community for the remaining $1,600.00 which he paid into the trust fund. As a basis for that argument, she contends that plaintiff commingled the proceeds from the sale of his separate stock with community funds, and that the payment of the amount of those proceeds to the trust fund thus must be regarded as having been made by the community. The trial judge obviously concluded otherwise, and we cannot say that he erred in reaching that conclusion.

5.
Plaintiff invested in a mutual fund plan in 1969, and during the existence of the second community he contributed $100.00 per month to that plan. He sold his entire interest in the fund at a loss of $176.00 shortly after the dissolution of the community. The accountant engaged by Mrs. Connell determined that $1,700.00 of community funds had been invested in this mutual fund plan. The trial judge ordered plaintiff to reimburse the community the sum of $1,700.00, that being the full amount which was paid into the mutual fund plan.
We agree with the trial court that the community is entitled to reimbursement of some amount because of these expenditures. The amount of the reimbursement, however, is governed by LSA-C.C. art. 2408. The evidence does not show the value of plaintiff's interest in this mutual fund plan at the time of his marriage to defendant, and it does not show the enhancement in value resulting from the contribution of community funds to it.
The case will be remanded for evidence as to the enhancement in the value of this fund resulting from the contribution of community funds, and for a determination of the amount owed by Dr. Connell's separate estate to the community.

6.
The trial judge held that Dr. Connell used community funds to pay the indebtedness and expenses incurred in effecting a community property settlement with his first wife. He found that $5,183.00 was spent for that purpose, and he ordered that plaintiff reimburse the community that amount.
The amount which Dr. Connell was required to pay to his first wife in settlement of her community claims, and the attorney's fees and expenses he incurred in effecting that settlement, were debts of the husband anterior to the marriage, and we think those debts must be acquitted out of his separate funds, as provided in LSA-C.C. art. 2403. We cannot say that the trial judge erred in finding that $5,183.00 was paid from community funds, and we affirm that part of the judgment appealed from *431 which orders plaintiff to reimburse the community for that amount.

7.
The evidence supports the judgment of the trial court ordering plaintiff to reimburse the community the sum of $4,720.12, that being the amount of community funds which plaintiff had in his possession when the second community was dissolved.

8.
The trial judge found that after the dissolution of the community Dr. Connell had been reimbursed $496.00 by his insurer for medical expenses which were paid with community funds during his marriage to defendant. He ordered that plaintiff reimburse the community that amount. We affirm that part of the trial court's decree.

9.
The trial judge found that Mrs. Connell was entitled to restitution from the community in the amount of $4,186.46, representing the following separate funds due her: (1) $2,158.00, representing insurance proceeds received by the community due to a burglary in which some of the items stolen were her separate property; (2) $1,000.00, being the amount of her recovery in a tort claim for personal injuries sustained by her in an automobile accident; (3) $724.96, being the balance in her personal account at the time she married plaintiff; (4) $54.00, being a refund on insurance premium paid by her prior to her marriage; and (5) $250.00 which she received from the sale of her separate automobile. Plaintiff contends that the trial court erred in allowing her to recover those amounts from the community.
Article 2391 of the Louisiana Civil Code provides that the wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits. See also Broyles v. Broyles, supra.
The law was stated in Succession of Slavich, 232 So.2d 846 (La.App. 4 Cir. 1970), as follows:
"The legal proposition presented to us is controlled under the provisions of Articles 2390 and 2391 of the Louisiana Civil Code and the jurisprudence thereunder. In essence, it provides that when a husband receives the paraphernal property of his wife she has a right of action against him for the restitution of such amount. In order to obtain restitution, she need only prove that her separate property, or the proceeds of a sale thereof, were delivered to her husband, and were used for his benefit or for the benefit of the community. She need not prove that the value of the community has been enhanced by the expenditure of her funds. Her burden, then, is twofold: first, she must show that she did, in fact, once have separate funds and second, she must show that the funds were either delivered to her husband or expended for the benefit of the community. Civil Code Article 2390 and 2391; Slater v. Culpepper, 233 La. 1071, 99 So.2d 348; Gouaux v. Gouaux, La.App., 211 So.2d 97, 98; Broyles v. Broyles, La.App., 215 So.2d 526."
The evidence in the instant suit shows that the parties maintained several bank accounts during the marriage, including an account in Mrs. Connell's name from which she alone could withdraw funds, a joint checking account, a joint savings account, and one or two professional accounts from which we assume Dr. Connell alone could make withdrawals. The first two items listed, aggregating $3,158.00, were deposited in the joint accounts of Dr. and Mrs. Connell, and thus they were not delivered to the husband. These amounts were commingled with *432 community funds, and the evidence does not show how much of those funds were spent for community purposes.
The last three amounts listed above, aggregating $1,025.96, were deposited in Mrs. Connell's separate account from which she alone could make withdrawals. Some community funds, including the earnings of Mrs. Connell during the marriage, also were placed in that account, and the account was closed out during the marriage. The separate funds of Mrs. Connell lost their identity and there is no way of determining how much of them were spent for community or for separate purposes.
We conclude that Mrs. Connell has failed to meet the burden of proof which rests on her as set out in Succession of Slavich, supra. See also Succession of Smith, 232 So.2d 569 (La.App. 4 Cir. 1970). The evidence fails to show that these funds were delivered to her husband or expended for the benefit of the community. The trial court erred, therefore, in holding that Mrs. Connell is entitled to restitution of those amounts from the community.

10.
Mrs. Connell contends in her answer to the appeal that the trial judge erred in giving plaintiff credit for the payment of $751.75 as the fee owed the attorney who represented defendant in 1971 while the parties briefly separated.
The evidence indicates that the amount due as fees owed that attorney had not been paid at the time of the trial. Plaintiff is not entitled to reimbursement if the account has not been paid. Since the case must be remanded, however, we believe the ends of justice would be served by permitting additional evidence to be presented to show whether that debt has been paid since the trial. If Dr. Connell has paid it with his separate funds, then he is entitled to be reimbursed and the decision of the trial court is correct. Otherwise, he is not entitled to credit for that payment and that part of the judgment which orders reimbursement must be reversed.

11.
Defendant also complains that the trial judge credited Dr. Connell with having paid several debts aggregating $250.76, whereas the evidence shows that they were paid prior to the termination of the community. The evidence supports the position taken by defendant, and we thus find that the trial court erred in crediting Dr. Connell with having paid that sum from his separate funds.

12.
Defendant contends that the trial judge erred in holding her accountable to the community for the value of a Thunderbird automobile which she took when the parties separated in January, 1972. Defendant has retained the possession and use of that automobile continuously since that time. The evidence shows that the automobile had a value of $1,500.00 at the time of the dissolution of the community, but that it had a value of only $200.00 for salvage purposes at the time of the trial. The trial judge held that Mrs. Connell was indebted to the community for $1,500.00, that being the value of the automobile at the time of the separation. Defendant contends that the trial court erred, and that the automobile in its present state should be decreed to be an asset of the community, subject to sale and appropriate distribution.
We agree with the trial judge. The automobile had a value of $1,500.00 when the community was dissolved and when she took it. We think she must be credited with having received assets of the community having that value. The trial judge correctly required her to account to the community for its value as of the time of the separation.

*433 13.
The trial judge held that Dr. Connell was entitled to the restitution of $466.64, being the amount of the insurance proceeds recovered due to the burglary of items belonging to his separate estate. Defendant contends that the proceeds became commingled with the community assets, and that there was no showing that the community benefitted from these funds.
The evidence shows that the above proceeds were commingled with community funds, and we are unable to determine how that part of the commingled funds were spent. We thus reverse that part of the trial court judgment which orders restitution of that amount to plaintiff.

14.
The trial judge held that Dr. Connell was entitled to be reimbursed from the community the sum of $4,323.00, representing the proceeds of the sale of stock which was owned by his separate estate.
The evidence shows that Dr. Connell purchased shares of stock on four occasions prior to the marriage, and that he sold all of that stock during the existence of the second community. From the proceeds of those sales he invested $1,600.00 in trust funds under the Keough Plan, and he has been relieved from accounting for that part of those funds. The evidence does not show what disposition was made of the other proceeds.
Since he has been credited, in effect, with $1,600.00 of those funds, it was error for the trial judge to order that he be reimbursed the same amount. The evidence fails to show what disposition was made of the remaining part of the proceeds, so we conclude that the trial court erred in ordering that the community reimburse plaintiff $4,323.00, representing the proceeds of the sale of that stock.
We find no error in the holdings of the trial court which have not been discussed.
For the reasons assigned, the judgment appealed from is reversed, and the case is remanded to the trial court for the receipt of additional evidence and for judgment determining the respective rights of the parties and ordering a partition of the community property consistent with the views herein expressed. One-half the costs of this appeal are assessed to plaintiff, and the remaining costs are assessed to the defendant.
Reversed and remanded.
MILLER, J., concurs in part, and in part dissents.
I concur in the remand. The trial court should require an inventory of the assets and liabilities of the community. The record indicates the community liabilities may exceed the assets, which if true, would eliminate the need for deciding the difficult issues. If liabilities do not exceed assets, I am unable to agree with all the majority holdings.