331 So.2d 4 (1976)
Michael Lee CONNELL
v.
Vergle Dell CONNELL.
No. 56941.
Supreme Court of Louisiana.
April 13, 1976.
*5 William L. McLeod, Jr., McLeod & Dow, Lake Charles, for defendant-applicant.
Philip R. Riegel, Jr., Sydney J. Parlongue, New Orleans, for plaintiff-respondent.
PER CURIAM.
Michael L. Connell was first married to Gisela Alexander. They were divorced on May 5, 1970. By the decree he was ordered to pay $1,200 monthly for the support of his wife and four minor children, issue of the marriage. This alimony and child support award was later reduced to $1,000 monthly, plus the income tax due thereon.
Connell was married a second time to Vergie Dell on June 20, 1970. By a suit filed January 24, 1972 and a decree of April 7, 1972 he was separated from bed and board from his second wife. No children were born of this union. Then, on December 21, 1973, Connell sued for a partition in kind, or, alternatively, by licitation, of all the property belonging to the community of acquets and gains theretofore existing between himself and Vergie Dell.
A partition, liquidation and accounting was ordered by the trial court, resulting in a settlement balance due in favor of Vergie Dell in the amount of $21,798.16, with costs taxed to the community. On appeal by the husband to the Third Circuit, the judgment was reversed and the case was remanded to the trial court for the receipt of additional evidence and for judgment in accordance with the views expressed by the court of appeal. 316 So.2d 421.
Writs were granted on the application of the wife. 321 So.2d 362, La.

I.
It is the wife Vergie Dell's contention that her husband's payments of $27,946.45, as alimony and child support to his first wife from his earnings during the second marriage, are chargeable solely to the husband's half interest in the community of acquets and gains existing as a result of the second marriage; that is, in the partition, liquidation and settlement of the community the amounts paid as alimony and child support to the first wife during the second marriage should be charged entirely against the husband's one-half of the community.
The answer to this question is furnished by the rationale of our decision in Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954). There, as the court of appeal noted, we held that the obligation of a husband to support his first family is an obligation *6 existing during the second marriage; it is not an antenuptial debt which must under Article 2403 be acquitted from his individual effects.
Thus, the support payments are for an obligation of the husband, imposed by law (not by contract nor by alimony judgment recognizing it and fixing its amount) and which month by month arises during the second community. Therefore, they are properly dischargeable from common funds, Civil Code Article 2403, without any necessity for the husband to account to his second wife from his share of the community assets, after dissolution of the second community, for such payments made from community funds.
The payment of these obligations, which came into existence during the existence of the second community and were thus properly dischargeable from community funds, is to be contrasted with the payment of antenuptial debts, contractual or otherwise, such as are founded upon contractual obligations preexisting the second marriage. These latter, while initially payable from the community since it forms part of the husband's patrimony, are subject to reimbursement to the wife at the termination of the second community. Creech v. Capitol Mack, 287 So.2d 497 (La.1974).
Nor is the wife entitled to an accounting or reward from the husband for one-half the value of the increase or improvement of the husband's separate property by virtue of the alimony and support payments made with community funds, because no showing is made that these payments resulted in an increase or amelioration of the value of the husband's separate property as required by Article 2408 of the Civil Code.

II.
Prior to his second marriage Connell acquired four life insurance policies insuring his life. By terms of the policies the insured was granted the right to change beneficiaries. His first wife or his children were named beneficiaries in all four policies. After his second marriage, Connell changed the beneficiaries and in some instances named Vergie Dell as beneficiary. During the existence of this second community regime, Connell paid premiums on these policies with community funds. The trial judge found that a total of $4,330.55 was paid as premiums out of funds belonging to the second community. He then decreed that Connell must reimburse the community the full amount of those payments.
The Court of Appeal reversed this ruling, holding that the community was not entitled to reimbursement for the amount paid as premiums on the policies during the existence of the community regime. It held, instead, that the measure of reimbursement to which the community was entitled from the husband's separate estate was the enhancement in value (cash surrender value) of the policies resulting from premium payments made with community funds. Butler v. Butler, 228 So.2d 339 (La. App.1969) and Broyles v. Broyles, 215 So. 2d 526 (La.App.1968) were relied upon to support its holding.
The wife Vergie Dell contends that the holding of the Court of Appeal in the instant case should be reversed on this issue because the decision here and in the Butler and Broyles cases are contrary to decisions of this Court in Succession of Lewis, 192 La. 734, 189 So. 118 (1939); Succession of Verneuille, 120 La. 605, 45 So. 520 (1908) and In re Moseman, 38 La.Ann. 219 (1886).
Decisions of this Court, and of the Court of Appeal in Succession of McLellan, 144 So.2d 291 (La.App.1962), prior to the decision in Broyles v. Broyles in 1968, held that after dissolution the community was entitled to reimbursement from the separate estate of the husband for the amount of the premiums paid with community funds *7 on policies belonging to the separate estate of one of the spouses.
However, recently in T. L. James & Co., Inc., et al. v. Montgomery, et al., 332 So.2d 834 (La., 1975) rehearing granted on other grounds, the rule of Butler v. Butler was recognized and approved in these words:
"As already noted, this insurance policy (a group life policy) was acquired before decedent's marriage to his second wife, and thus was part of his separate estate. No restitution is due the community for the premiums paid by decedent. In such a case, a community claim is supportable only when the cash value of the policy has increased during the community's existence and then only for one-half the extent of the increase in value. The policy before us is a term insurance policy, which never had a cash surrender value. Therefore, no accounting is due the community. Butler v. Butler, 228 So.2d 339 (La.App. 1969)." (parentheses added)
With the jurisprudence in this state, the Court now adheres to its decision of December 8, 1975 in the T. L. James case on this issue. Accordingly, the holding of the Court of Appeal on this question is affirmed. This result is in harmony with the principle announced in Article 2408 of the Civil Code. That article recites that when the separate property of either husband or wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one-half of the value of the increase or amelioration, if it be proved that the increase or amelioration be the result of the common labor, expense or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in value of property, or the chances of trade.
Although it is well-known that the law as it applies to life insurance is Sui generis in this State, and the Civil Code does not purport to comprehend that subject, the Court can discern nothing incompatible with that fact when it accepts and applies a principle embodied in the Civil Code to bring about consistency in dealing with problems of community property when life insurance is involved.
Since, as the Court of Appeal found, the record does not satisfactorily establish the enhancement in value of the policies during the existence of the second community, and three of the policies appear to have cash surrender values at the time of the dissolution of the community, the case is remanded to the trial court for this determination and for judgment on this issue not inconsistent with the reasons assigned.

III.
In the application to this Court for certiorari, the third assignment of error made by the wife is based upon the allegation that the trial court and Court of Appeal both held that payment of premiums by the community for a policy of insurance which was a community asset should be charged against the wife's separate estate. It is contended in connection with this assignment of error that a policy insuring the life of the wife, purchased during the community, is a community asset, and the community funds used to pay the premiums for this policy should have been absorbed by the community. Estate of Moseman, 38 La.Ann. 219 (1886), is cited as authority for the wife's contention.
According to her testimony, prior to marriage Vergie Dell acquired a life insurance policy insuring her life for $10,000. At the time of its inception, the policy named her parents as beneficiaries. During the marriage the beneficiaries were changed, and when the community was dissolved her parents were again named beneficiaries. Premiums on this policy in the amount of $15.30 were paid with community funds during the community regime.
Vergie Dell acquired another life insurance policy insuring her life for $20,000.
*8 This policy had its inception in November 1970 during the community regime. Her parents and her husband were designated beneficiaries. Monthly premiums in the amount of $34.20 were paid with community funds during the existence of the community. After dissolution of the community only her parents were named as beneficiaries.
As to the first policy, acquired by Vergie Dell prior to her marriage, it became her separate property. Inasmuch as community funds were used to pay premiums while the community existed, Vergie Dell is responsible to the community for whatever enhancement in value the policy experienced from the use of community funds.
The second policy acquired during the existence of the community is a community asset, liable to the community for its value at the time of the dissolution of the community. No reimbursement is due the community for premiums paid on this policy.
The judgment is amended accordingly.
Since the three foregoing assignments of error are the only issues presented in the application for certiorari which this Court granted, the other issues presented by brief are not considered.
For the reasons assigned, the judgment of the Court of Appeal is amended in accordance with the reasons assigned. Otherwise, the case is remanded to the trial court for compliance with the decree and judgment of the Court of Appeal as herein amended. Assessment of costs is to await the final determination of this cause.
SUMMERS, J., concurs in part and dissents in part (with reasons).
TATE, J., adds additional concurring reasons.
SUMMERS, Justice (concurs in part and dissents in part).
Although I agree with the result reached by the majority, I do not subscribe to the reasons assigned for the disposition of Part I of the majority opinion. The question presented in Part I, in my view, is answered by the rule which prescribes that when the law itself has imposed an antenuptial duty or obligation on a spouse, as for alimony to a former wife and support of children of a former marriage, or for a penal sum upon sentence for a criminal delict, or the like, the duty or obligation thus created follows the spouse into a second or subsequent marriage as a valid liability of the community of acquets and gains arising from the second or subsequent marriage. Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954); 1 de Funiak, Principles of Community Property, Sec. 165 (1943); de Funiak, Principles of Community Property, § 165 (2d ed. 1971).
Although these alimony and child support obligations, incurred prior to the second marriage, are antenuptial in character, they form exceptions to the rule that debts of husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects as Article 2403 of the Civil Code requires. The exception is rationalized on the basis that the State occupies a status unlike other creditors. It is an exception always recognized by the Spanish law, the source of Louisiana's community property principles. Guiterrez, Quaestio C XXIX, to Nov.Rec.Law 9.
I agree, however, that the wife is not entitled to an accounting or reward from the husband for one-half the value of the increase or improvement of the husband's separate property by virtue of the alimony and support payments made with community funds, because no showing is made that these payments resulted in an increase or amelioration of the value of the husband's separate property as required by Article 2408 of the Civil Code. Although the Spanish sources would hold otherwise, by enacting Article 2408 Louisiana requires a different result.
And I do not agree that Creech v. Capitol Mack, 287 So.2d 497 (La.1974) cited by *9 the majority, is correct. That decision flies in the face of the plain language of Article 2403 which makes debts of both husband and wife, anterior to the marriage, payable only out of the personal and individual effects of the spouse incurring the antenuptial obligation. See my dissent to Creech v. Capitol Mack, supra.
Again I must dissent from the use of a per curiam opinion in a decision of this character. See State v. Andry, 260 La. 79, 255 So.2d 81 (1971). In this decision, declaring a principle of law not heretofore decided by this Court, to adopt such a departure from established procedure requires an explanation. None is forth-coming from those who have subscribed to the "Per Curiam" opinion. In my view, adopting the practice represents a watering down of the Court's standards. It dilutes the responsibility properly imposed upon the author of the opinion.
TATE, Justice (concurring).
The issue of importance before us is: Is a community resulting from a second marriage ultimately responsible for the husband's payment during it of family support obligations arising as a result of a first marriage? Or, instead, must the husband account to the second community after its dissolution for such payments made from its assets?
By our majority opinion, we answered "yes" to the first question and "no" to the second. By this concurring opinion, the writer wishes to amplify the reasons why he subscribes to the conclusion of the majority's per curiam[1] opinion of multiple authorship expressing the court's consensus.
In my opinion, the present is not an antenuptial obligation pre-existing the second marriage (insofar as involving the support payments which become due during, and for periods co-existing, with this marriage). It is, rather, a continuing obligation which the husband must acquit as it arises during the marriagefor instance, month by month, in the amount of the support obligation fixed by the alimony judgment in connection with the termination of the first marriage.
As we shall note, this being an obligation of the husband arising during the existence of the second community, it is properly dischargeable from community funds. It is thus not considered a payment from community funds of an antenuptial debt of the husband, for which, at the dissolution of the community, he must account to his wife.

(1)
During this second marriage, the plaintiff husband paid a total of $27,946.45 in alimony payments, child support, and medical expenses for his children of his first marriage. This first marriage had terminated by divorce on May 5, 1970, and the present (or second) marriage took place on June 20, 1970. All of the payments were for monthly alimony and child support payments which became due after the second marriage, and for medical expenses of the husband's children which were incurred during the second marriage.
Our majority holds that, upon dissolution of the second community, the second wife has no claim based upon the expenditure of community funds to satisfy these obligations of the husband, which resulted from his legal obligation to support his children as well as to support the wife of his first marriage, dissolved without fault on her part.

*10 (2)
The following additional reasons support the rationale of our majority opinion:
Civil Code Article 2403 provides that "debts contracted during the marriage. . . must be acquitted out of common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."
The primary legal issue is whether the husband's obligation for current alimony and support payments for his children and wife of the first marriage should be characterized as one which arose during the second marriage which must be acquitted from community funds; or whether, instead, it should be characterized as his prenuptial debt.
In either event, of course, the obligation may initially be enforceable against community funds. See Creech v. Capitol Mack, 287 So.2d 497 (La.1974). Nevertheless, in the first case, it is characterized as an obligation for which community funds are ultimately liable; while in the second case, it is characterized as the payment of the husband's antenuptial debt (for which payments the husband must account, at the dissolution of the community, to his wife, since it was the expenditure of community funds to pay his separate debt).
The issue of legal characterization was answered by us in Fazzio v. Krieger, 226 La. 511, 76 So.2d 713 (1954). There, the question was whether the income of the second community was liable for child support payments owed by the husband to the children of a first marriage. We were there concerned with whether the question of alimony liability arising from a former marriage was to be considered a "debt" contracted by the husband prior to the second marriage or whether, instead, the obligation should be considered as one which may be acquitted from community funds.
In resolving the issue, in Fazzio, this court analyzed prior decisions and applicable jurisprudential principles, including those derived from the Spanish law upon which our community property system is based. We concluded that alimony liability for family support, either of a child or of a former wife, arises from an obligation imposed by law, an obligation not founded upon contract or alimony judgment but essentially based upon a legal duty of support founded upon civil code articles so providing.
We rested our decision that the second community was liable "on the principle of law that the obligation of the father to support his children by a former marriage is not a debt but an obligation or duty imposed by law for which his undivided interest in the second community is responsible."[2] 76 So.2d 717.
Fazzio did not specifically rule upon the issue of the husband's liability, if any, at the dissolution of the second community to account (or not) to his wife for the use of community funds to satisfy this liability. Nevertheless, determinative for the present decision is Fazzio's express holding that the support payments for the spouse and children of a first marriage satisfy a legal obligation of the husband which exists and month by month arises during the second community and which cannot be characterized as an antenuptial debt.
Thus, the payment of the support and alimony payments during the second marriage *11 were to satisfy a legal obligation of the husband which became due month by month during the second marriage. Therefore, they were payable from community funds. However, not being the payment of an antenuptial debt payable from the husband's individual effects, the wife was not entitled under Civil Code Article 2403 to have him account to her at the dissolution of the community for these payments made from community funds.
The payment of these obligations, which came into existence during the existence of the second community and were thus properly dischargeable from community funds, is to be contrasted with the payment of antenuptial debts, contractual or otherwise, such as are founded upon contractual obligations pre-existing the marriage or upon liability for support during a period pre-existing the second marriage. These latter, while initially payable from the community since it forms part of the husband's patrimony, are subject to reimbursement to the wife at the termination of the second community. Creech v. Capitol Mack, 287 So.2d 497 (La.1974).
The decisions of the intermediate court cited to us all concern the issue of the liability of the second community for payment of the husband's support obligations owed to the family of a first marriage: White v. Klein, 263 So.2d 496 (La.App. 1st Cir.) cert. denied, 262 La. 1097, 266 So.2d 223 (1972); Morace v. Morace, 220 So.2d 775 (La.App.1st Cir.) cert. denied, 254 La. 287, 223 So.2d 410 (1969); Lytell v. Lytell, 144 So.2d 925 (La.App.4th Cir. 1962), cert. denied. They do not reach the issue here posed, although their refusal to characterize the support obligation as the husband's antenuptial debt is consistent with the rationale by which we have decided the present issue.
For these reasons, I respectfully concur.
NOTES
[1] See Black's Law Dictionary, verbo "per curiam", page 1293 (4th ed., 1951):

"By the court. A phrase used in the reports to distinguish an opinion of the whole court from an opinion written by any one judge. * * *"
[2] As in Fazzio, in the present case the husband's payment of support obligations for his first family did not exceed the value of his share of the earnings of the second community. We do not reach, nor express any opinion thereasto, the issue of accountability which might arise to the extent that the payment for such support obligations exceeded the value of the partner's share of the earnings of the second marriage.