720 So.2d 392 (1998)
Kenwood WHITE, Plaintiff-Appellant,
v.
Arlene BROUSSARD, Defendant-Appellee.
No. 98-428.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
Michael Herschel Colvin, for Kenwood White.
*393 Paul Joseph Hebert, Lafayette, for Arlene Broussard.
Before DOUCET C.J., and GREMILLION and PICKETT, JJ.
PICKETT, Judge.
The plaintiff, Kenwood White, appeals the trial court's judgment on a suit to partition former community property. Assigned as error is the trial court's classification of two life insurance policies as the defendant's separate property, and the calculation of the plaintiff's reimbursement claim for the premiums paid by accumulated dividends on one of the policies. The trial court calculated the reimbursement by the increase in the value (cash surrender value) of the policy realized during the existence of the community and awarded the plaintiff one half of that amount. Plaintiff finally assigns as error the trial court's determination of other reimbursement claims.
The defendant, Arlene Broussard, answered the appeal by assigning as error the trial court's determination that reimbursement is due from payment of the policy premiums from the policy's dividends.
For the following reasons, we amend and affirm the trial court's judgment.

ASSIGNMENT OF ERROR # 1
The plaintiff and the defendant, Arlene Broussard, were married on June 2, 1973. The parties were divorced and the community terminated on June 29, 1995. The first Northwest Mutual Life policy, X-XXX-XXX, was purchased on November 15, 1979, insuring the life of Noe R. Broussard, Arlene Broussard's father. Arlene Broussard is the named beneficiary and owner of the policy. Each year, Mr. Broussard would write a check to the Arlene who would then write a check to Northwest to pay the premium. This practice continued until 1993. At that time Arlene Broussard began paying the policy premium with the policy dividends that had been placed in an advance premium deposit account, and her father ceased the annual gift.
The second Northwest Mutual Life policy, X-XXX-XXX, was originally owned by N.R. Broussard Landing. In January of 1994, ownership of the policy was transferred in equal shares to the beneficiaries, Noe R. Broussard's five daughters including Arlene Broussard. Testimony adduced at trial revealed Noe R. Broussard's intent in donating the money for the policy premiums was for estate planning purposes. The policies were intended to cover the cost of inheritance taxes.
The trial court held both policies to be the separate property of Arlene Broussard, finding them to be a gift to Arlene alone and not to Kenwood White. La.Civ.Code art. 2341. The trial court stated at the close of the trial that the defendant has overcome the presumption that things in possession of a spouse are community property by a preponderance of the evidence. La.Civ.Code 2340. In reviewing the record, particularly the testimony of the donor, Mr. Broussard, and of the insurance agent who sold the policy, we find no error in the trial court's factual determination.

ASSIGNMENT OF ERROR # 2
Though the policies are separate property, the dividends yielded by the first policy are community funds as fruits of separate property. La.Civ.Code art. 2339. As these community funds were used to pay the premiums on the separate policy the community is entitled to reimbursement. La.Civ. Code art. 2366. The trial court stated that the proper amount of reimbursement is not the amount paid in premiums on the policy during the existence of the community, but the extent the cash value of the policy increased. Connell v. Connell, 331 So.2d 4 (La.1976). The trial court found the first policy, X-XXX-XXX, increased in value by $11,502.35 and found the second policy had no cash surrender value. The plaintiff contends the trial court erred by using this calculation, but instead should have awarded him half of the premiums paid with community funds.
In Connell, the husband acquired a life insurance policy before his marriage, but paid the separate policy's premiums with community funds. The trial court calculated the reimbursement claim for the use of these *394 funds by the amount of the funds actually used to pay the premiums. On appeal, the Third Circuit based the reimbursement due the community on the increased value of the policy during the existence of the community. The supreme court approved the court of appeals' calculation citing T.L. James & Co., Inc., et al v. Montgomery, et al., 332 So.2d 834, 847 (La.1975):
No restitution is due the community for the premiums paid by decedent. In such a case, a community claim is supportable only when the cash value of the policy has increased during the community's existence, and then only for one-half the extent of the increase in value. The policy before us is a term insurance policy, which never had a cash surrender value. Therefore, no accounting is due the community.
The Connell decision was based on old La.Civ.Code art. 2408 which based all reimbursement claims for the use of community property to benefit separate property on the increase in value realized in the separate property at the time of termination of the community. Article 2408 has since been replaced by several specific articles addressing reimbursement claims. La.Civ.Code art. 2366 covers the situation at issue where community property is used for the benefit of separate property, which states:.
If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
Buildings, other constructions permanently attached to the ground, and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.
The general rule has changed towards reimbursing the community in the form of an interest free loan during the existence of the community. La.Civ.Code art. 2364 comment (d). The change in the general rule eliminates the risk of loss to the community, which in turn eliminates the risk of gain. Louisiana Civil Law Treatise 16: Matrimonial Regimes, Second Edition, Spaht & Hargrave. However, article 2366 is clear and unambiguous in establishing the calculation of reimbursement by the amount or value of the community property had at the time it was used to benefit the separate property. La.Civ.Code art. 9. The effect of article 2366 is to legislatively overrule Connell. Therefore, we amend the trial court's calculation of the plaintiff's reimbursement claim to reflect the proper calculation under the new articles, one-half the amount of the community funds paid to the separate insurance policy as premiums during the existence of the community.

ASSIGNMENT OF ERROR # 3
The plaintiff's final assignment of error claims the trial court erred in denying his reimbursement claims as to the trade in on a Ford pick-up that had $5,000 left owing, and $540.88 paid by the plaintiff on an outstanding credit card bill. The trial court denied these claims on the basis that the plaintiff failed to prove reimbursement was due by a preponderance of the evidence.
A reading of the record supports the trial court's determination. In the plaintiff's testimony it is unclear exactly how the $5,000 debt against the community's Ford pick-up was paid. It appears that the truck was sold for $5,000 and plaintiff then bought a Chevrolet pick-up to replace it. The credit card debt was denied because plaintiff failed to prove the debt was paid with separate funds. The trial court stated in written reasons the funds were derived from community cattle sales. Given these facts, we agree with the trial court.
For the above reasons, the judgment of the trial court is affirmed except as to the plaintiff's reimbursement claim of community funds used to improve a separate insurance policy paid as premiums. The total amount of the premium paid by the community was $12,400.00. Thus, the amount of the reimbursement claim is amended from $11,502.35 to $6,200.00 to reflect the plaintiff's community interest in the annual premium paid from *395 the policy dividends paid on November 15, 1993 and 1994. Cost are to be divided among the parties.
AMENDED AND AFFIRMED.