PAUL A. BONIN, Judge.
 

 |,Ms. Catherine Corley appeals the judgments of the trial court which distributed some community assets between her former husband, Mr. Wayne Westcott, and herself, awarded her former attorneys, Mary B. Petruccelli and Tracy Ann Pe-truccelli, their fees and costs, and condemned her to repay Mr. Westcott the value of a diamond she removed from his ring. Mr. Westcott appeals from the judgment of the trial court denying his claim for damages against Ms. Corley occasioned by the effects of Hurricane Katrina on his uninsured property. The Petruccellis moved for a dismissal of Ms. Corley’s appeal and for damages pursuant to La. C.C.P. art. 2168 for a frivolous appeal.
 
 [1]
 
 For the reasons which follow, we affirm in part, reverse in part, and remand the matter for further proceedings.
 

 |
 
 important Reference Dates
 

 The parties were married on July 15, 1985. Together they operated a construction business and acquired several immovable properties in St. Bernard Parish. On January 13, 2004, Ms. Corley filed a suit for divorce against Mr. Westcott. While the suit was pending, the parties, both represented by counsel, entered into a Consent Judgment on September 9, 2004.
 
 *49
 
 This Consent Judgment distributed some of the immovable property in St. Bernard between them and set forth the intended dispositions of the remaining immovable properties owned by them.
 
 [2]
 

 On November 29, 2004, Ms. Corley filed her petition to partition the community property, along with her sworn descriptive list, as provided for by La. R.S. 9:2801. Several weeks later, Mr. Westcott filed his sworn descriptive list. Neither party’s list included the immovable properties previously distributed between them in the Consent Judgment. Both parties’ lists included movable property and identified which party was in possession of those movables.
 

 On February 11, 2005, the judgment of divorce was signed. The community existing between the parties was therefore terminated as of January 13, 2004. La. C.C. art. 159.
 

 On August 29, 2005, Hurricane Katrina devastated St. Bernard Parish. Two properties distributed to Mr. Westcott in the Consent Judgment of September 9, 2004 were uninsured. The former family home occupied by Ms. Corley pending |3its sale by virtue of the Consent Judgment was insured. The insurance paid $77,000 for contents destroyed in the home.
 
 [3]
 

 On May 12, 2006, Mr. Westcott sued Ms. Corley in a separate lawsuit. That lawsuit was consolidated with the pending partition suit. In his principal demand, he sought damages from Ms. Corley for her alleged failure to notify him that the flood insurance policies had lapsed on the two properties distributed to him and for her failure to respond to his requests for insurance coverage information. Ms. Corley reconvened, seeking to have the entirety of the insurance proceeds recovery of $77,000 awarded to her.
 

 On April 13, 2007, the Petruccellis filed their intervention, seeking payment of their fees and expenses for services rendered to Ms. Corley post-divorce. They attached their itemized statement to their petition.
 

 By agreement of all parties, the trial of the partition suit, the consolidated damage suit, and the intervention were to be tried on the same date. Trial was held on December 13, 2007.
 

 The Four Resulting Judgments
 

 Four judgments were issued by the trial court. The first judgment was rendered on March 4, 2008. This judgment addressed issues raised in the partition suit and the consolidated damage suit. The second judgment was rendered on March 10, 2008 and addressed the Petruccellis’ intervention. The third judgment was rendered on June 10, 2008 and purported to correct a mathematical calculation |4in the March 4, 2008 judgment. The fourth judgment was rendered on June 19, 2008 and was based upon Mr. Westcott’s motion for new trial. It reaffirmed the trial court’s earlier judgment of March 4, 2008 denying Mr. Westcott’s claim against Ms. Corley regarding notification of the lapse of insurance.
 

 Ms. Corley suspensively appealed and Mr. Westcott devolutively appealed. The
 
 *50
 
 Petruccellis, as previously noted, moved to dismiss Ms. Corley’s appeal.
 

 Appeal from the Intervention Judgment
 

 The trial court granted judgment on the intervention in favor of the Petruc-cellis and against Ms. Corley in the amount of $7,003.50, with interest from date of demand until paid. The sole evidence before the court was the stipulation that if the Petruccellis were called to testify at the trial, they would testify in accord with the billing statement attached to their petition. Tracy Petruccelli was present in the courtroom during the trial. Ms. Cor-ley neither took the opportunity to cross-examine Tracy Petruccelli on the billing nor did Ms. Corley testify regarding the Petruccellis’ services.
 
 [4]
 

 A stipulation has the effect of a judicial admission or confession and binds all parties and the court.
 
 Miller v. LAMMICO,
 
 07-1352, p. 24 (La.1/16/08), 973 So.2d 693, 709,
 
 citing R.J. D’Hemecourt Petroleum, Inc. v. McNamara,
 
 444 So.2d 600, 601 (La.1983). Because the only evidence before the trier of fact was the uncontradicted stipulation, the trial judge acted within his discretion in awarding the Petruccellis the full amount of their claim. Moreover, a trial judge is permitted | fito call upon his own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case.
 
 McCartney v. Orleans Parish School Board,
 
 99-0515, p. 9 (La. App. 4 Cir. 9/29/99) 743 So.2d 821, 827,
 
 citing Louque v. Eckerd Drug Store No. 523,
 
 405 So.2d 1097 (La.App. 4 Cir.1980). The trial court did not err in its judgment and, therefore, we affirm the judgment of March 10, 2008.
 

 Appeal from the Judgments on the Consolidated Damage Suit
 

 Mr. Westcott assigns an error related to the two pieces of immovable property on Gladiator Drive distributed to him in a Consent Judgment executed by the parties and signed by the trial court dated September 9, 2004. In that judgment, Ms. Corley agreed to transfer all of her interest in and to those properties to Mr. West-cott, that he was entitled to collect all those rents and revenues, and under the express terms of the Consent Judgment, he was “responsible for all the debts and taxes” on those Gladiator Drive properties.
 

 After the execution of the Consent Judgment, Mr. Westcott, through counsel, requested that Ms. Corley furnish him with the insurance coverage information on
 
 his
 
 properties. Ms. Corley responded that Mr. Westcott had the information. Mr. Westcott contends that is untrue and that she willfully refused to furnish the information. When the storm struck almost one year after the Consent Judgment, Mr. Westcott still had not ascertained, either on his own or from Ms. Corley, whether the properties were insured. They were not.
 

 IfiMr. Westcott admits that he knew Fal-lon Lorenz, an insurance agent whom the parties had used to secure insurance on their properties during the marriage. Mr. Westcott excuses his failure to directly and timely contact this insurance agent to ascertain the insurance status on his properties because Mr. Lorenz was not the only agent they had used. However, Mr. West-cott knew enough to contact Mr. Lorenz post-Katrina to inquire about the status of his coverage as well as to arrange for Mr. Lorenz’s production of evidence that the renewal notices were sent to both the
 
 *51
 
 Gladiator Drive addresses
 
 [5]
 
 as well as to the former family home where Ms. Corley was living.
 

 Mr. Westcott urges us to apply the holding of Lococo
 
 v. Lococo,
 
 462 So.2d 893 (La.App. 4 Cir.1984), to find that Ms. Cor-ley had undertaken the duty to manage Mr. Westcott’s insurance affairs, and to hold that she breached a fiduciary duty to him. He alternatively argues that Ms. Corley is liable to him under La. C.C. art. 2315 in tort or under La. C.C. art.1953 on account of fraud. He complains that the trial judge erred in relying upon La. C.C. art. 2369.3, which provides:
 

 A spouse has a duty to preserve and to manage prudently former community property
 
 under his control,
 
 including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.
 

 A community enterprise is a business that is not a legal entity.
 

 (emphasis added)
 

 |7This article was added to the Civil Code in 1995, well after the
 
 Lococo
 
 holding.
 

 Mr. Westcott’s contentions are founded upon the notion that the Gladiator properties were still owned in indivisión with Ms. Corley. Whether
 
 Lococo
 
 or article 2369.3 is applied, the factual condition which must be satisfied to impose liability upon a former spouse is that the former spouse has the property under his or her control. The trial court determined that it was Mr. Westcott, and not Ms. Corley, who by virtue of his consent to the judgment of September 9, 2004, affirmatively undertook the duty to manage the properties under his control, which included management of the insurance affairs for those properties. “By its very nature, a consent or compromise judgment is a bilateral contract wherein the parties adjust their differences by mutual consent, thereby putting an end to litigation (or anticipated litigation) with each party balancing the hope of gain against the fear of loss.”
 
 Braning v. Braning,
 
 449 So.2d 670, 672 (La.App. 4 Cir.1984).
 

 The trial judge’s determination is, moreover, supported by Mr. Westcott’s version of events. According to him, Ms. Corley was refusing to manage the insurance matters. She insisted that she did
 
 not
 
 have the insurance documents. She claimed that she had already delivered the materials to him or his counsel. At no time did she represent to him that she was handling the insurance affairs for his properties nor did she ever represent to him that she paid the premiums or that the premiums were due.
 

 |8We agree with the trial judge that Ms. Corley had no fiduciary duty to Mr. West-cott for the Gladiator Drive properties distributed to him in the Consent Judgment because those properties were under
 
 his
 
 control. Additionally, under these facts we discern no other legal duty arising in tort, including fraud, which Ms. Corley owed to Mr. Westcott.
 

 The trial court’s denial of Mr. Westcott’s claim is affirmed.
 

 Appeal on the Partition Issues
 

 The partition issues involved in this appeal are the calculations and conclusions by the court appointed CPA, the parties’ respective interests in a whole life insurance policy with MetLife, the parties’ interest in insurance proceeds for personal
 
 *52
 
 contents damaged as a result of the storm, and the valuation of the diamond which Ms. Corley removed from Mr. Westcott’s ring. We address these issues below.
 

 Court appointed expert. The trial judge exercised his authority under La. R.S. 9:2801(A)(3), which provides:
 

 The court may appoint such experts pursuant to Articles 192 and 873 of the Louisiana Code of Civil Procedure as it deems proper to assist the court in the settlement of the community and partition of community property, including the classification of assets as community or separate, the appraisal of community assets, the settlement of the claims of the parties, and the allocation of assets and liabilities to the parties.
 

 La. C.C.P. art. 191(A) provides that the “appointment of expert witnesses is controlled by Louisiana Code of Evidence Article 706.” La. C.E. art. 706(A) provides in pertinent part that a court-appointed expert witness “shall advise the ^parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.” The trial judge appointed Mr. Steve Kissee, a certified public accountant, as the expert witness to assist the court. The expert issued a report (“the Kissee Report”) upon which the trial court expressly relied and which it adopted as a part of its judgments.
 

 At trial, the judge learned for the first time that Mr. Kissee had not furnished a copy of his report to the parties or their counsel. The judge noted several times during the proceedings that the trial would be reset so that Mr. Kissee could be examined on his report.
 
 [6]
 
 However, trial was not reset prior to the appealed judgments being issued so that the parties could examine or cross-examine Mr. Kissee, as they were statutorily entitled to do. Moreover, in its judgments of March 4, 2008 and June 19, 2008, the trial court specifically incorporated and relied upon the Kissee Report to partially partition certain community property and determine what reimbursements were due the parties.
 

 Ms. Corley assigns as error the failure of the trial judge to permit her the opportunity to examine the court appointed expert before the issuance of the judgments relating to the partition. Because the Kis-see Report and its findings are material to the trial court’s determination of partition issues, we remand this matter for a hearing before the trial judge at which the parties may examine Mr. Kissee | ,nand receive any other evidence required to complete the partition. Thereafter, the trial court is to make legal and evidentiary findings as to all community property, community debts, and reimbursements due the parties, consistent with this decision, La. R.S. 9:2801, La. C.C. arts. 2358
 
 et seq.,
 
 and other applicable law.
 

 To aid the expert and the parties on remand, we clarify the legal principles applicable to the other partition issues claims which the trial court passed upon.
 

 
 *53
 
 The MetLife Policy. During the existence of the marriage, the parties acquired and maintained a whole life insurance policy with MetLife in the name of and on the life of Mr. Westcott. During the marriage, the premiums on this policy were paid for with community funds.
 
 [7]
 
 The trial court judgment awarded Ms. Corley a reimbursement of one-half of the premiums paid prior to the termination of the community, but did not calculate the amount of the reimbursement in its judgments or credit Ms. Corley with a specific sum for this item.
 

 Errors of law are reviewed
 
 de novo. Lasha v. Olin Corp.,
 
 625 So.2d 1002, 1006 (La.1993), citing
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 n. 2 (La.1989). Appellate review of a question of law is simply a decision as to whether the trial court’s decision is legally correct or incorrect.
 
 Miller v. Southern Baptist Hospital,
 
 00-1352 p. 10 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, 18. If the trial court’s decision is based upon its erroneous application of law, rather than on the valid exercise of discretion, that decision is not entitled to deference by the reviewing court.
 
 Kevin Associates, L.L.C. v. Crawford,
 
 03-0211, p. 15 (La.1/30/04) 865 So.2d11 34, 44,
 
 citing Kem Search, Inc. v. Sheffield,
 
 434 So.2d 1067 (La.1983). We find that the judgments partially misapplied the law as to the Met-Life policy.
 

 The Louisiana Supreme Court in
 
 Talbot v. Talbot,
 
 03-0814, pp. 19-20 (La.12/12/03), 864 So.2d 590, 604 explained the correct treatment of a life insurance policy with a value in a community property partition proceeding:
 

 Under Louisiana law, life insurance policies are treated as unique contracts governed by their own rules rather than by the Civil Code.... According to the rules of privity of contract, “the contracting spouse is the sole manager of the contractual rights that are provided under the policy.” ... In principle, contracts produce effects as between the contracting parties only. La. Civ.Code art 2346, cmt. (b) (2003).
 

 Upon termination of the community, a life insurance policy purchased with community funds during the community is “a co-owned asset subject to partition by the co-owners.” ... Under the privity principle, the policy should be awarded to the owner of the policy, with the other spouse receiving property of an equal value.... To provide otherwise would interfere with the contractual relationship between the insurer and the owner of record.
 

 In this case, the parties do not dispute that the Great Southern Life Insurance policy is community property, nor is it disputed that Mr. Talbot is the owner of the policy. As community property upon termination, the life insurance policy became a co-owned asset subject to partition by the co-owners. In accordance with the privity principle, the community property must be partitioned allowing Mr. Talbot to retain ownership of the policy, with Mrs. Talbot receiving property of an equal value.
 

 (citations omitted in ellipses)
 

 Because this whole life policy was acquired and maintained during the community and community funds paid the premiums, the policy is a community asset. La. C.C. art. 2338. Under
 
 Talbot,
 
 the trial court was legally correct in allocating the MetLife policy to Mr. Westcott. However, the trial court erred as a matter of law in
 
 *54
 
 awarding Ms. Corley reimbursement for one-half of the premiums 112paid during the community. A “policy acquired during the existence of the community is a community asset, liable to the community for its value at the time of the dissolution of the community. No reimbursement is due the community for premiums paid on this policy.”
 
 Connell v. Connell,
 
 331 So.2d 4, 8 (La.1976).
 
 [8]
 

 Therefore, on remand, the trial court is to determine the “cash surrender value at the time of the partition.”
 
 See
 
 Katherine S. Spaht & Richard D. Moreno, 16 Louisiana Civil Law Treatise, Matrimonial Regimes § 3.32, at 191-92 (3rd ed.2007); La. R.S. 9:2801(A)(4)(a). Once the trial court determines the cash surrender value it shall award “property of equal value” to Ms. Corley.
 
 Talbot, supra;
 
 La. R.S. 9:2801(A)(4)(b).
 
 [9]
 

 Contents Coverage. Ms. Corley answered Mr. Westcott’s petition
 
 for
 
 damages with a reconventional demand requesting that she be awarded 100% of the flood insurance proceeds for the contents of the Palmisano house. Those insurance proceeds were placed in a joint bank account pending partition. Her contention is that she prayed for sole use of the Palmi-sano house and its contents, that she was awarded sole use of the Palmisano house by court order, and that the parties agreed to that in the September 9, 2004 Consent Judgment. Additionally, she contends that they had already partitioned the movable property prior to the |1sstorm, and therefore the remaining movables were her separate property, either because those expensive items insured were purchased by her after the termination of the community, or the property had already been partitioned by the parties. In support of her contention, Ms. Corley argues that she lived at the Palmisano residence approximately one year prior to the storm with her new husband, Mr. Westcott had already removed the movables of his choosing, and in all the contentious litigation and exchange of letters, neither of the parties mentioned the movables any further.
 

 Mr. Westcott admitted that the parties had divided the family cars and that he had taken some movables from the home but those were of meager value. Ms. Cor-ley countered that Mr. Westcott took the more valuable vehicle which was unencumbered and she was left with a vehicle that was almost fully mortgaged. The judgment awarded Mr. Westcott one-half of those insurance proceeds.
 

 Importantly, both parties were named insureds on the flood insurance policy, and the policy was paid for by the mortgage escrow account into which each party paid after the termination of the community.
 
 *55
 
 The insurance proceeds check was made payable to the order of both parties.
 

 After testimony and review of available documents, the judge made a factual determination that the parties had not yet partitioned the movables remaining at the Palmisano home and that finding will not be disturbed on appeal. Since the damages occurred after the termination of the community, at the time of the loss, the parties were then co-owners in indivisión of the movables belonging to the 114former community. La. C.C. art. 2369.2 (“Each spouse owns an undivided one-half interest in former community property and its fruits and products”) “After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless provided by law or by juridical act.” La. C.C. art. 2369.1.
 

 Within the provisions governing co-ownership, La. C.C. art. 797 provides that “[i]n the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal.” In the absence of other provisions of law or juridical act, Mr. Westcott and Ms. Corley are presumed to be equal co-owners. The record does not contain a judgment or juridical act between the parties pártitioning the movable property at Palmisano. Likewise, the record does not contain appropriate evidence that the parties adopted a community property regime by matrimonial agreement that altered their fractional ownership interests in the insured movables. La. C.C. art. 2369.2, comment (b) (as added by 1995 La. Acts, No. 433, § 1). Therefore, as to the proceeds of the insurance payment, Ms. Corley has not overcome the presumption that she is only entitled to an
 
 equal
 
 share in such proceeds.
 
 See
 
 La. C.E. arts. 302(3) and 304.
 

 While Ms. Corley offered some evidence that there were some movables at the Pal-misano residence that were acquired by the community existing between her and her new husband, in its March 4, 2008 judgment the trial court concluded that “[t]he insurance coverage limit was substantially less than the value of the items of the inventory for the insurance contents claim and far exceeded the true value of | ifithose lost items.” The trial judge reasonably applied the insurance proceeds first to the co-owned property of the parties, which they had insured, and determined that the coverage was exhausted on the co-owned items. The trial judge’s determination that each party is entitled to one-half of the insurance proceeds is affirmed.
 
 [10]
 

 Valuation of the diamond.
 

 The parties dispute the value of a 2.3 carat diamond that Ms. Corley removed from a ring which she had given to Mr. Westcott during the marriage.
 
 [11]
 
 There is no dispute that the ring was a donation
 
 inter vivos
 
 by Ms. Corley to her then-husband and therefore his separate property. La. C.C. arts. 2341 and 2343. Ms. Corley removed the diamond and replaced it with a cubic zirconium to deceive Mr. Westcott. Based upon the seller’s description, Bou-dreaux’s Jewelers valued the diamond at $17,500. Ms. Corley testified that the price of the entire ring was only $5,500 when she purchased it several years earlier. She offered no written appraisals of her own. Trial court factual determinations may not be reversed unless manifestly erroneous.
 
 Adams v. Rhodia, Inc.,
 
 07-2110, p. 10 (La.5/21/08), 983 So.2d 798, 806.
 
 *56
 
 The trial judge expressly accepted the Boudreaux valuation and was not manifestly erroneous in doing so. “The determination of an expert’s credibility is also a factual question subject to the manifestly erroneous/clearly wrong standard of review.”
 
 Galem-Med, Inc. v. Porter,
 
 05-0788, p. 14 (La.App. 4 Cir. 3/29/06), 928 So.2d 681, 688-89,
 
 citing Rosell v.
 
 ESCO, 549 So.2d 840, 844 (La.1989)
 
 and Martin v. East
 

 16Jefferson General Hosp.,
 
 582 So.2d 1272, 1276-1277 (La.2005). “The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound.”
 
 Galen-Med, Inc.,
 
 05-0788, p. 14, 928 So.2d at 689,
 
 citing Lasyone v. Kansas City Southern R.R.,
 
 00-2628 (La.4/3/01), 786 So.2d 682. That the trial judge was more persuaded of the value of the diamond by the expert appraisal of a jeweler than by its purchase price years earlier cannot be clearly wrong.
 

 Similarly, the trial court’s credibility determination accepting Mr. Westcott’s testimony that he did not take the diamond back from Ms. Corley’s residence over Ms. Corley’s contrary testimony is not manifestly erroneous. Where findings are based on credibility determinations, the manifest error standard demands greater deference to the finder of fact.
 
 Adams,
 
 07-2110, p. 10, 988 So.2d at 806. Ms. Corley alternatively argues that she was entitled to retrieve the diamond from the ring because of the “ingratitude” of Mr. Westcott. “A donation inter vivos may be revoked because of ingratitude ...” La. C.C. art. 1556. Revocation on account of ingratitude may take place in the case where the donee “has been guilty towards [the donor] of cruel treatment, crimes, or grievous injuries.” La. C.C. art. 1557(2). “In case of revocation for ingratitude, the donee shall return the thing given....” La. C.C. art. 1560. The trial judge restricted Ms. Corley’s testimony in which she was attempting to establish the legal grounds to revoke the donation on account of Mr. Westcott’s ingratitude towards her. A trial court is afforded great discretion in admitting evidence and its decision to admit or | ,7exclude evidence may not be reversed on appeal absent abuse of that discretion.
 
 Miller v. Southern Baptist Hospital,
 
 00-1352, p. 21, 806 So.2d at 15.
 

 Moreover, the trial judge did not abuse his discretion in restricting her testimony because she had never instituted the necessary action to revoke the donation on the grounds of Mr. Westcott’s ingratitude. La. C.C. art. 1558 provides, in pertinent part, that “[a]n action of revocation for ingratitude shall be brought within one year from the day the donor knew or should have known of the act of ingratitude.” Neither did she give Mr. Westcott notice in her pleadings of her contention. La. C.C.P. art. 1154. Undoubtedly the trial judge evaluated Ms. Corley’s
 
 bona fides
 
 in light of the circumstances in which she surreptitiously removed the real diamond and substituted in its place the fake diamond. Ms. Corley gave Mr. Westcott a diamond ring; she only took back the diamond.
 

 In the settlement of the partition claims, Mr. Westcott is entitled, as the trial court correctly ruled, to full reimbursement from Ms. Corley of the $17,500 value for the missing diamond.
 

 Decree
 

 The judgment on the intervention rendered on March 10, 2008 in favor of the Petruccellis and against Ms. Corley granting the relief requested in the intervention is affirmed.
 

 Only insofar as they dismissed with prejudice Mr. Westcott’s petition for damages for Ms. Corley’s failure to forward
 
 *57
 
 the insurance notices, the judgments rendered on March 4, 2008 and June 19, 2008 are affirmed.
 

 | 18The judgment rendered on March 4, 2008 is reversed in part, and the partition proceedings are remanded to the trial court to reopen the trial for the limited purpose of permitting the parties to cross-examine the court-appointed expert witness, Mr. Kissee, to testify themselves regarding the issues in the Kissee Report, including the cash surrender value of the MetLife policy, and for the trial court to render a final judgment of partition as provided by La. R.S. 9:2801 (A)(4).
 

 The judgment rendered on June 10, 2008 is vacated.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 LOVE, J., Concurs in the result.
 

 [1]
 

 . The motion to dismiss has been denied in an order separate from this decision. As to their motion for damages for frivolous appeal, the Petruccellis neither appealed nor answered the appeal. In the absence of an appeal or an answer to the appeal, the Petruccellis are not entitled to the relief sought. La. C.C.P. arts. 2121; 2133(A).
 
 HCNO Services, Inc. v. Secure Computing Systems, Inc.,
 
 96-1753, 96-1693 (La.App. 4 Cir. 4/23/97) 693 So.2d 835, 847.
 

 [2]
 

 . On November 7, 2006, the parties executed a "Partial Act of Partition and Settlement of Community” which tracked the dispositions made in the Consent Judgment.
 

 [3]
 

 . Earlier, the insurer had paid an initial $3,000 on the Katrina claim which the parties evenly divided. The $77,000 was deposited in a joint interest bearing account pending the final partition.
 

 [4]
 

 . Ms. Corley only requested to reserve her right to testify further in connection with the expected testimony of the court-appointed expert, Mr. Steve Kissee, CPA, which reservation was approved by the court.
 

 [5]
 

 . Mr. Westcott had resided for some time at one of the Gladiator properties after the divorce but before the storm. The properties were also occupied by tenants before the storm.
 

 [6]
 

 . "I will tell you what we will do with Mr. Kissee. I am going to have him come back and testify ..." "I am going to have Mr. Kissee come in, and you can come back with your clients and take his statement.... I got a report from him that you didn't get a chance to see until this morning, ... But I will give you a chance to cross-examine Mr. Kissee. I am going to re-set that portion of the matter.” "You all understand what I am doing? It’s just not fair. Mr. Kissee has made a conclusion, and I assumed that he sent you all the report.... I thought he sent it to you all." "I will set up, right after the first of the year, another hearing, and we are going to be limited to what items are in Mr. Kissee’s report. I am not going — this case will not be open on all issues. It will be limited strictly to those issues."
 

 [7]
 

 . After Ms. Corley filed her petition for divorce, she paid two annual premiums, totaling $17,900. After the divorce, Mr. Westcott paid an annual premium in the amount of $8,950.00.
 

 [8]
 

 . Mr. Westcott argues that he owes Ms. Corley one-half of the premiums paid during the community on the policy and relies upon
 
 White v. Broussard,
 
 98-428 (La.App. 3 Cir. 10/7/98), 720 So.2d 392, 393. However, the policy at issue in
 
 White
 
 was the
 
 separate
 
 property of the spouse. In
 
 White,
 
 the Third Circuit noted that "[t]he effect of article 2366 is to legislatively overrule
 
 Connell." Id.,
 
 p. 4, 720 So.2d at 394. We note that in
 
 Connell
 
 the Supreme Court was discussing multiple policies, some separate and one community. La.- C.C. art. 2366 deals with reimbursement to the community for the funds used for separate properly and does not "overrule" the holding of
 
 Connell
 
 regarding tire policy which is a community asset.
 

 [9]
 

 . In
 
 Talbot,
 
 03-0814, p. 20, 864 So.2d at 604, the Supreme Court, "[bjased upon the economic situation of the parties and the division of other property in the case”, approved the award to the non-owner spouse of a "share in the cash surrender value of the policy."
 
 See also
 
 Robert C. Lowe, 2 Louisiana Practice Series, Divorce § 9:24 (2009 ed.).
 

 [10]
 

 . The Kissee Report did not give either party credit for the insurance proceeds.
 

 [11]
 

 . The parties agreed that on one occasion they exchanged gifts of diamond rings during the marriage to celebrate a good year in business.