**MICHAEL B. REIS, JR.**        \*        **NO. 2024-CA-0750**

**VERSUS**        \*

**MANDY POHLMANN REIS**     \*        **COURT OF APPEAL**

                         **FOURTH CIRCUIT**

                    \*

                         **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 19-1318, DIVISION "E"
Honorable Eric A. Bopp,
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Paula A. Brown, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)

Stephanie A. Fratello
3017 21st Street
Suite 211
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLANT

Alan G. Bouterie, Jr.
Jordan P. Guillot
BOUTERIE LAW FIRM, APLC
2110 Pakenham Drive
Chalmette, LA 70043

      COUNSEL FOR DEFENDANT/APPELLEE

                                   **AFFIRMED**
                              **APRIL 3, 2025**

This appeal arises out of the classification of an asset as separate or community property following a divorce. Appellant, Michael B. Reis, Jr. ("Mr. Reis"), seeks to appeal the district court's August 12, 2024 judgment, which found Outkast Industrial Group, LLC ("Outkast Industrial") to be a community asset and recognized as part of the community of acquets and gains[1] between Mr. Reis and Appellee, Mandy Pohlmann Reis ("Ms. Reis"). For the reasons that follow, we affirm the district court's judgment.

## FACTS AND PROCEDURAL HISTORY

The parties were married on December 4, 2010, and subsequently divorced on October 24, 2019. During their marriage, the parties formed Outkast Environmental, LLC ("Outkast Environmental"), a company which specialized in hazardous material disposal and various industrial cleaning services. Following their divorce, the parties have engaged in litigation pertaining to child custody and partition of community property. On January 9, 2020, the district court entered an interim consent judgment, wherein the majority of the issues focused on child

---

[1] *See* La. C.C. art. 2335 cited *infra* p. 9.

custody. However, the interim consent judgment also discussed Outkast Environmental. Specifically, the district court ordered the following:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that both parties shall remain in their current positions and salaries/hourly pay at Outkast Environmental LLC, unless otherwise agreed to in writing between the parties. In connection with those positions, the parties hereby agree not [to] purchase immovable property, cars, boats, or ATV[s] with funds belonging to Outkast Environmental LLC, unless otherwise agreed to in writing between the parties.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** the parties shall have equal access to any and all records, payroll, accounts, documents, etc., pertaining to any businesses, including but not limited to Outkast Environmental LLC, in which the parties and/or any community have an interest in. Further, the parties are to execute any and all documents necessary to ensure that [Mr. Reis'] payroll check is deposited into his own separate account.

Roughly one month after the consent judgment was issued, on February 12, 2020, Mr. Reis formed Outkast Industrial, a company that performed nearly identical functions to Outkast Environmental, such as cleaning and dredging oil spills. On October 19, 2020, Ms. Reis filed a detailed descriptive list[2] of all community assets and liabilities known to her, which included Outkast Environmental. That same day, Mr. Reis filed his own detailed descriptive list, wherein he included Outkast Environmental's banking and financial accounts. Notably, Mr. Reis' list did not include Outkast Environmental as a standalone asset, nor did it include Outkast Industrial.

Nearly two years later, on September 2, 2022, Ms. Reis filed a *Petition for Judicial Partition of Community Property and Motion to File Descriptive Lists*. Thereafter, the district court ordered that each party file a detailed descriptive list

---

[2] A detailed descriptive list is an inventory of all community property filed during a partition proceeding, typically including the fair market value and location of the assets, as well as all community liabilities. *See* La. R.S. 9:2801.

of all community property. Ms. Reis filed an amended detailed descriptive list on February 7, 2023, including, among other things, Outkast Environmental and Outkast Industrial as community assets. In addition, on April 13, 2023, Ms. Reis filed a *Motion to Traverse Descriptive List* ("motion to traverse"),[3] wherein she alleged that Mr. Reis' descriptive list was deficient in multiple ways, including his failure to list both Outkast Environmental and Outkast Industrial as community assets. Specifically, Ms. Reis asserted that Outkast Industrial should have been listed as community property because the company was started with community funds. The motion to traverse, originally set for hearing on June 14, 2023, was continued without date by mutual consent of the parties. During the pendency of the motion, the parties agreed to bifurcate the proceeding, narrowing the scope of the hearing to address the classification of assets.

The evidentiary hearing on the bifurcated motion to traverse proceeded on July 29, 2024, and solely focused on the classification of Outkast Industrial as a community or separate asset. Ms. Reis testified first. She explained that Outkast Environmental was formed during the existence of the community with Mr. Reis as a hazardous maintenance and cleaning business dealing with hazardous materials. Ms. Reis was the office manager, whereas Mr. Reis was the field manager who was in charge of the employees. Ms. Reis provided that she did not discover Outkast Industrial's existence until June of 2020, and that Mr. Reis was utilizing materials and equipment that belonged to Outkast Environmental in his operation of Outkast Industrial. According to Ms. Reis, Mr. Reis funded Outkast Industrial with $40,000 that he had withdrawn from a joint account shared between the

---

[3] A motion to traverse can be filed when an interested party believes that a detailed descriptive list contains an error. *In re Succession of Feingerts*, 14-0140, p. 9 (La. App. 4 Cir. 3/18/15), 162 So.3d 1215, 1221.

3

parties on February 7, 2020. Ms. Reis further testified that Mr. Reis was operating under the name and reputation of Outkast Environmental while profiting from Outkast Industrial. In addition, Mr. Reis hired active employees of Outkast Environmental to work for Outkast Industrial, while they were still being paid by Outkast Environmental. Ms. Reis admitted that, when Outkast Environmental was originally created in 2016, it was filed in her name as the registered agent with the members listed as Channing Reis and Cory Reis—Mr. Reis' sons from a previous relationship. Ms. Reis confirmed that, at the time, Mr. Reis was under a non-compete clause from his previous employer, so his name could not be listed as a member of Outkast Environmental. In 2017, Cory Reis and Channing Reis were removed from the Outkast Environmental documents, and Ms. Reis substituted herself as the sole member while remaining the registered agent. Mr. Reis was never added as a member of Outkast Environmental, even after his non-compete clause expired.

Next, Mr. Reis testified. He provided that, on February 12, 2020, after his divorce from Ms. Reis, he formed Outkast Industrial and was listed as the sole member and owner of the company. Mr. Reis testified that he did not use any money from his joint account with Ms. Reis to finance Outkast Industrial. According to Mr. Reis, a friend of his, Barry J. Thibodaux ("Mr. Thibodaux"), lent him $60,000—which was evidenced by a promissory note, dated February 13, 2020—to fund Outkast Industrial. From that $60,000, Mr. Reis testified that he deposited $40,000 into the Outkast Industrial bank account to start the company and kept the additional $20,000 from this loan for other miscellaneous expenses. Mr. Reis further testified that he did not use any Outkast Environmental equipment to operate Outkast Industrial, but instead rented equipment or used equipment

4

belonging to him or his employees personally. Mr. Reis admitted that he hired employees for Outkast Industrial, despite those individuals still being employed and paid by Outkast Environmental. Mr. Reis explained that Outkast Environmental and Outkast Industrial are two totally distinct businesses. Outkast Environmental performed regular confined space rescue, including tank cleaning and pipeline cleaning in confined spaces, whereas Outkast Industrial performed confined space high angle rescue, including cleaning and dredging oil spills. According to Mr. Reis, high angle space rescues require different certifications than regular confined space rescues.

Finally, Cory Reis ("Cory") testified. He relayed that he began working for Outkast Industrial as a manager in June of 2020. However, on cross-examination, Cory testified that he began working in March of 2020, though specifying that there was no payment from Outkast Industrial from March to June. He explicitly provided that Outkast Industrial employees who had previously worked for Outkast Environmental were not paid by Outkast Industrial while still employed by Outkast Environmental. With regard to the use of equipment, Cory testified that there was no use of Outkast Environmental equipment for Outkast Industrial jobs. He specifically provided that he either used his own equipment, borrowed equipment, or used equipment found on the job sites where Outkast Industrial was contracted to perform work.

After hearing testimony and closing arguments from the attorneys, the district court took the matter under advisement. On August 12, 2024, the district court issued its judgment with incorporated reasons, wherein it found Outkast Industrial to be a community asset and, therefore, part of the community of acquets and gains existing between Mr. Reis and Ms. Reis. This timely appeal followed.

*Motion to Dismiss*

Prior to addressing the merits of this appeal, we will first address the *Motion to Dismiss Devolutive Appeal* filed by Ms. Reis on November 27, 2024. Ms. Reis asserts that Mr. Reis' appeal should be dismissed because the judgment at issue in this appeal pertains solely to the classification of a single asset, Outkast Industrial. Thus, without any division of assets or liabilities between the parties, Ms. Reis avers that the August 12, 2024 judgment is not a final appealable judgment.

"When a judgment only partially determines the merits of an action, it is a partial judgment and is immediately appealable if authorized by La. C.C.P. art. 1915." *Glazer v. Glazer*, 23-0502, p. 2 (La. App. 4 Cir. 4/3/24), 390 So.3d 765, 767 (citing *Cent. Bldg. Servs., LLC v. St. Augustine High Sch., Inc.*, 18-0427, p. 2 (La. App. 4 Cir. 10/17/18), 258 So.3d 103, 105). Louisiana Code of Civil Procedure article 1915(A) provides six different instances wherein a final judgment may be rendered by the court despite that judgment not granting all of the relief prayed for or adjudicating all of the issues in the case.[4] Mr. Reis asserts in his opposition to the motion to dismiss that La. C.C.P. art. 1915(A)(4) applies in this matter, as the issues of classification of assets and valuation of those assets have been bifurcated. However, bifurcation of these issues does not indicate that

---

[4] The six instances found in La. C.C.P. art. 1915(A)(1)-(6) are:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G).

6

there exists principal and incidental demands as defined in La. C.C.P. art. 1031(B), which provides that "[i]ncidental demands are reconvention, cross-claims, intervention, and the demand against third parties."  None of these types of demands are present in this matter; instead, the issues of classification and valuation have merely been separated into two separate trials.  Moreover, La. C.C.P. art. 1915(B)(1)-(2) provides:

> (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party . . . the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
> (2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Our review of the August 12, 2024 judgment reflects that the district court only found Outkast Industrial to be a community asset and did not reach the issue of valuation. The district court also did not designate the judgment as final. Considering the above-cited articles, we find that the August 12, 2024 judgment is a non-appealable judgment.

Having reached this conclusion, we now consider whether Mr. Reis' appeal may be converted into an application for supervisory writ.  "This Court is vested with the discretionary power to convert an appeal of an interlocutory judgment into an application for supervisory review." *Rieth v. Munguia*, 23-0547, p. 3 (La. App. 4 Cir. 5/30/24), 391 So.3d 39, 44. "Because the proper procedural vehicle for seeking review of an interlocutory judgment is ordinarily by application for supervisory review, we can—when appropriate—convert the improper appeal to

7

such an application." *Glazer*, 23-0502, p. 4, 390 So.3d at 768 (quoting *Perry v. F.H. Myers Constr. Corp.*, 23-0064, p. 5 (La. App. 4 Cir. 11/2/23), 377 So.3d 331, 335, *writ denied*, 23-01584, p. 1 (La. 2/6/24), 378 So.3d 749). "When confronted with lack of appellate jurisdiction, we have converted the appeal to an application for supervisory writ under the circumstances in which the appeals were filed within the thirty-day period allowed for the filing of applications for supervisory review." *Id.* (citing *Perry*, 23-0064, pp. 5-6, 377 So.3d at 335).

Mr. Reis' motion for appeal was filed on August 28, 2024, which is within the thirty-day period allowed by La. Unif. R. Ct. App. 4-3.[5] Therefore, we exercise our discretion to convert Mr. Reis' appeal of the August 12, 2024 judgment into an application for supervisory review. As such, Ms. Reis' motion to dismiss is denied.

## DISCUSSION

Mr. Reis raises multiple assignments of error for this Court's review.[6] The core issue before this Court is whether Outkast Industrial, the entity formed by Mr.

---

[5] The time to file an application for supervisory review is laid out in La. Unif. R. Ct. App. 4-3, which provides, in pertinent part, that upon receiving a notice of intention, the district court judge "shall immediately set a reasonable return date within which the application shall be filed in the Court of Appeal. The return date in civil cases shall not exceed 30 days from the date of notice of the judgment . . . . "

[6] In his appellate brief, Mr. Reis raised the following three assignments of error:

1) Whether the district court erred in its failure to consider the proper classification statutes, namely, La.C.C. arts. 2338 and 2341, setting forth date of acquisition and source of funds, in a traversal trial specifically bifurcated to determine whether Outkast Industrial was the separate property of Mr. Reis, particularly in instances where an entity was formed after termination of the community and source of funds was not from the community.

2) Whether the district court erred in its application of the mismanagement statute and application of the findings and reasoning set forth in jurisprudence in classification of an asset as community or separate, particularly when there was

8

Reis after the termination of the community between the parties, was properly classified as community property and therefore part of the community of acquets and gains for the purposes of partitioning the parties' property. We begin our discussion by setting forth the standard of review and applicable law.

*Standard of Review*

"Determination of the separate or community nature of property is a factual determination subject to manifest error review." *Huger v. Huger*, 23-00117, p. 1 (La. 5/16/23), 360 So.3d 476, 477 (citing *Ross v. Ross*, 02-2984, p. 18 (La. 10/21/03), 857 So.2d 384, 395). The manifest error "standard 'precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.'" *Reaver v. Degas House, L.L.C.*, 22-0464, p. 3 (La. App. 4 Cir. 3/13/23), 359 So.3d 570, 573 (quoting *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98). "Errors of law are reviewed *de novo*." *Westcott v. Westcott*, 08-1339, p. 10 (La. App. 4 Cir. 4/17/09), 11 So.3d 45, 53 (citing *Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La. 1993)). "Appellate review of a question of law is simply a decision as to whether the [district] court's decision is legally correct or incorrect." *Id.* (citing *Miller v. S. Baptist Hosp.*, 00-1352, p. 10 (La. App. 4 Cir. 11/21/01), 806 So.2d 10, 18).

---

never a filing against Mr. Reis for mismanagement or failure to preserve a community asset; and therefore, not before the district court.

3) The district court erred in finding that Mr. Reis had a duty to preserve and manage a former community asset, in violation of the mismanagement statute, and in violation of the reasoning set forth in jurisprudence, if he was not the spouse in possession or control of the former community asset and where his former spouse was in possession and control of that entity, evidenced by numerous judicial confessions made in the record of these proceedings and another proceeding.

*Applicable Law*

"Property of married persons is either community or separate . . . ." La. C.C. art. 2335. Community property consists, in part, of "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; [and] property acquired with community things or with community and separate things, unless classified as separate property under Article 2341 . . . ." La. C.C. art. 2338. Conversely, separate property consists, in part, of "property acquired by a spouse prior to the establishment of a community property regime; [and] property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used . . . ." La. C.C. art. 2341. "Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." La. C.C. art. 2340. "The spouse seeking to rebut the presumption bears the burden of proving by a preponderance of the evidence that property is separate in nature." *Durden v. Durden*, 14-1154, p. 9 (La. App. 4 Cir. 4/29/15), 165 So.3d 1131, 1139 (citing *Ross v. Ross*, 02-2984, p. 9 (La. 10/21/03), 857 So.2d 384, 390). "Further, classification of property as either separate or community is fixed at the time of its acquisition." *In re Succession of Firmin*, 09-0411, p. 7 (La. App. 4 Cir. 4/21/10), 38 So.3d 445, 449 (citation omitted). Louisiana Civil Code article 2369.3 provides, in pertinent part, that "[a] spouse has a duty to preserve and to manage prudently former community property under his

control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime."

The district court, in its reasons for judgment, explained that Mr. Reis had transferred the community's interest in Outkast Environmental to Outkast Industrial by creating a business which conducted the same type of work and used several of the same employees. Specifically, the district court cited La. C.C. art. 2369.3, as well as the cases of *Queenan v. Queenan*, 492 So.2d 902 (La. App. 3 Cir. 1986), and *Granger v. Granger*, 06-1615 (La. App. 3 Cir. 9/26/07), 967 So.2d 540, for the proposition that spouses owe one another a duty to preserve former community enterprises under their control. This led the district court to conclude that when Mr. Reis transferred all of his efforts and resources from Outkast Environmental to Outkast Industrial, despite a court order, he was no longer acting in the best interest of Outkast Environmental. This transfer resulted in the district court's ultimate decision to classify Outkast Industrial as a community asset.

Mr. Reis argues that the district court erred in relying on La. C.C. art. 2369.3 and the cases of *Queenan* and *Granger*. He further asserts that the district court erred in failing to consider the source of the funds used to create Outkast Industrial at the time of its acquisition. Conversely, Ms. Reis argues that La. C.C. art. 2369.3 and the *Queenan* and *Granger* cases are not only relevant, but directly on point with the matter at hand for the proposition that Outkast Industrial was a continuation of Outkast Environmental, and that the district court properly applied them in concluding that Outkast Industrial was a community asset. Regarding the

11

source of funds argument, Ms. Reis counters that Outkast Industrial was properly found to be community property because Mr. Reis began the business with the $40,000 she asserts he withdrew from their personal joint account.

Before examining the two cases discussed ad nauseum by the parties, we note that in each case, the appellate court reached the issue of valuation of community assets. While the matter *sub judice* stops at the issue of classification of assets and valuation of those assets is not before this Court, we still find the cases and analysis therein to be instructive. In *Queenan*, the parties obtained a judgment of divorce on February 20, 1980, and their community property regime terminated on November 13, 1979. 492 So.2d at 904. Included in their community property were three corporations: Mike Queenan Equipment, Co., Inc.; Queenan Development Co., Inc.; and Oak Meadow Water Works. Following the termination of the community, Mr. Queenan continued managing these three corporations. However, in May of 1980, Mr. Queenan personally purchased "heavier and larger equipment in his own name." *Id.* at 492 So.2d at 910. Following those purchases, in the second half of 1981, Mr. Queenan formed a new corporation—Mike Queenan Rigging, Inc.—and transferred his recently purchased equipment to the ownership of the new corporation. Mr. Queenan operated the new corporation out of the same office as the family businesses and, as noted by both the district court and the appellate court, he led the new corporation to success and prosperity at the expense of that of the family businesses. The appellate court found that Mr. Queenan had breached his fiduciary duties regarding his control of

the family businesses. Although the new corporation was formed after termination of the community, as a result of Mr. Queenan's actions in forming a corporation without necessity and to the detriment of the family businesses, the appellate court decided "to treat the [new] corporation as if it were part and parcel of the community regime insofar as allocation and accounting purposes are concerned." *Id.* at 492 So.2d at 913.

In *Granger*, the parties formed an oilfield pipe inspection company during their marriage called Technical Tubular Inspection Services, Inc. ("Technical Tubular"). 06-1615, p. 1, 967 So.2d at 542. Ms. Granger managed the office and handled the financial side of the business, while Mr. Granger solicited business and ran daily operations. In April of 1994, Ms. Granger filed a petition for divorce and to partition the community property. In the interim between filing for divorce and the granting of divorce in March of 1995, Mr. Granger was in control of Technical Tubular. In 1993, the gross income for the company was roughly $918,000. However, by June of 1995, the company's sales were closer to $103,000. Concerned by this downward trend, Ms. Granger requested and was subsequently appointed as temporary receiver of the company. However, immediately after this appointment, Mr. Granger abandoned Technical Tubular and formed a new corporation called Tube-Tech, which "was staffed by former employees of Technical Tubular, retained former clients of the community business and used a similar name and logo." *Id.* at p. 2, 967 So.2d at 542. The trial on the partition of Technical Tubular did not occur until January of 2006, over a decade later. At that

point, Technical Tubular's stock was considered worthless. The district court noted that Mr. Granger had formed Tube-Tech shortly after Ms. Granger's appointment as receiver, as well as after Mr. Granger "was ordered not to dispose of any property of Technical Tubular, nor to change the status of the affairs of Technical Tubular to the injury of [Ms. Granger]." *Id.* The district court in *Granger* relied on *Queenan* and found that each party owned a one-half interest in Tube-Tech "as it is a substitute corporation for Technical Tubular due to [Mr. Granger's] action in taking all of the customers and employees of Technical Tubular" and in acting against the court order enjoining him from changing the status of affairs of Technical Tubular to Ms. Granger's detriment. *Id.* at p. 2, 967 So.2d at 543. Upon review, the appellate court also relied on *Queenan*, summarizing that the *Queenan* court had characterized that corporation, "though technically [Mr. Queenan's] separate property, as part of the community and therefore subject to partition." *Id.* at p. 3, 967 So.2d at 543. In following the same line of reasoning as *Queenan*, specifically considering Mr. Granger's hiring of the same employees and calling upon the same customers, the *Granger* court affirmed the district court, finding that there was no error in awarding Ms. Granger "one-half of the value of Tube-Tech as her share in the community[-]owned business." *Id.* at p. 8, 967 So.2d at 546.

Mr. Reis proposes that these cases are inapplicable because each case ultimately reached the issue of damages related to breach of duty owed to former community property. As previously noted, while these two cases do in fact go

further than what we are being asked to consider in the instant matter, the court was first required to make a determination as to whether the business formed after the judgment of divorce and termination of the community was deemed to be classified as a community asset. It is this analysis that we find to be instructive to this Court in the instant case.

First, the matter *sub judice* consists of facts nearly analogous to the *Granger* case. Beginning with the company names and logos, Outkast Industrial has not differentiated itself from Outkast Environmental in a major way as it pertains to its image to the public. As for the name, the first word of both Outkast Environmental and Outkast Industrial is "Outkast," with the same spelling. Further, the logos are very similar, both including an American flag in the background with symbols for hazardous materials printed on top, and matching vertical orientations of the company names. We do not suggest that the logos are wholly identical. However, the two are closely related and do not contain a meaningful differentiation between them aside from the actual names themselves. As it relates to the business side of Outkast Environmental, Mr. Reis served as the field manager and the party responsible for employees, and Ms. Reis was the office manager with the main task of organizing payroll. After the parties divorced, both were ordered by the district court to remain in their current positions at Outkast Environmental without the ability to unilaterally make large purchases, essentially maintaining the status quo of the company. However, even with this order in place, the record reflects that Mr. Reis sought business for Outkast Industrial from the same customers of

Outkast Environmental, and also hired employees for Outkast Industrial from Outkast Environmental's roster. Additionally, while the parties disputed the issue of whether Outkast Environmental equipment was used by Outkast Industrial, the district court ultimately placed more credibility on Ms. Reis' testimony, finding that Mr. Reis and Outkast Industrial employees had used Outkast Environmental equipment, supplies and materials. "The [district] court sitting as trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error." *Hill v. Strickland*, 24-0118, p. 2 (La. App. 4 Cir. 6/12/24), 391 So.3d 680, 682 (quoting *Patterson v. Charles*, 19-0333, p. 9 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1082). We cannot say that the district court erred in finding Ms. Reis' testimony to be more credible in this instance. Lastly, while Outkast Environmental grossed $2,042,711 in 2018 and $1,344,250 in 2019, its annual income had been greatly diminished to grossing only $588,969 in 2020, and ultimately grossing $0 in 2021 and 2022. Considering the paralleled facts, we are persuaded by the *Granger* court, and consider Outkast Industrial to merely be a "substitute corporation" for Outkast Environmental. Further, we find that the district court's consideration of La. C.C. art. 2369.3 in reaching its conclusion is appropriate because it merely illuminates: (1) Mr. Reis' choice to ignore an order from the court by way of the interim consent judgment; (2) his abandonment of the community enterprise of Outkast Environmental; and (3) the ultimate draining of Outkast Environmental's assets and income to the immediate benefit of Outkast Industrial.

16

Lastly, we address Mr. Reis' source of funds argument. This argument hinges on the principle of real subrogation, which provides that "when a separate asset of a spouse is utilized to obtain a new asset, that new asset remains the spouse's separate property." *Huger v. Huger*, 21-0535, p. 5 (La. App. 4 Cir. 12/14/22), 367 So.3d 698, 701, *rev'd per curiam*, 23-00117, p. 1 (La. 5/16/23), 360 So.3d 476. Comment (c) to La. C.C. art. 2341 provides that "[t]he principle of real subrogation is applicable to both separate and community property." According to Mr. Reis, he utilized his separate funds to fund Outkast Industrial. Based upon our review of the record, the following evidence was adduced at trial:

- (1) On February 7, 2020, Mr. Reis withdrew $40,000 from a Capital One joint bank account shared with Ms. Reis.
- (2) On February 12, 2020, Mr. Reis formed Outkast Industrial by filing with the Louisiana Secretary of State.
- (3) On February 13, 2020, Mr. Reis executed a promissory note with Mr. Thibodaux in the amount of $60,000. The note does not contain any information as to the purpose of the loan.
- (4) On February 14, 2020, Mr. Reis deposited $40,000 into the Outkast Industrial account with Hancock Whitney.

The record is unclear as to several facts surrounding the two alleged sources of funds used to start Outkast Industrial. As to the $40,000 withdrawn from the joint bank account, there is no indication where the money was subsequently deposited or what Mr. Reis used it for if not to fund Outkast Industrial. As to the loan from Mr. Thibodaux, it is unknown where the $60,000 was initially deposited, or what Mr. Reis did with the remaining $20,000, assuming this loan was partially used to fund Outkast Industrial. In fact, if we accept Mr. Reis' narrative at face value, $60,000 is still unaccounted for. In making a credibility determination based upon

17

the evidence presented at trial, the district court clearly did not find the testimony provided by Mr. Reis as to source of funds to be credible, and thus did not afford any weight to his argument in reaching its conclusion. "Credibility determinations, including evaluating and resolving conflicting testimony, are factual findings governed by the well-settled manifest error standard of review." *Young v. Boudreaux*, 23-0479, p. 5 (La. App. 4 Cir. 2/29/24), 384 So.3d 1052, 1056 (quoting *Dixon v. Travelers Ins. Co.*, 02-1364, p. 8 (La. App. 4 Cir. 4/2/03), 842 So.2d 478, 484). "As the trier of fact, a trial court determines the credibility of the witnesses and has the prerogative of accepting or rejecting some or all of the witnesses' testimony . . . ." *Id.* (quoting *Gaspard v. Horace Mann Ins. Co.*, 17-1140, p. 11 (La. App. 3 Cir. 5/9/18), 247 So.3d 778, 787). Further, where record evidence so contradicts "the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." *Id.* at p. 6, 384 So.3d at 1056 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La. 1989)). "Thus, '[t]he [district] court's findings of fact, credibility evaluations, and inferences of fact should not be disturbed on appeal if they are reasonable.'" *Id.* (quoting *Gaspard*, 17-1140, p. 11, 247 So.3d at 787). Considering the wide discretion given to district courts in making credibility assessments, we find that the district court was not manifestly erroneous in reasoning that Outkast Industrial

should be considered a community asset and be recognized as part of the community of acquets and gains between the parties.

## DECREE

For the aforementioned reasons, we affirm the district court's August 12, 2024 judgment.

**AFFIRMED**